ESTERLY HARVESTING MACHINE COMPANY V.
WESLEY PRINGLE ET AL.

FILED JUNE 26, 1894.   No. 5596.

Contracts: CONSIDERATION. Neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise in his favor.

ERROR from the district court of Perkins county. Tried below before CHURCH, J.

*Grimes & Wilcox*, for plaintiff in error.

*Parsons & Logan*, contra.

Post, J.

This was an action of replevin in the district court of
Perkins county, by the plaintiff in error against the de-
fendants in error, to recover possession of five Esterly har-
vesters and binders, seven Esterly mowers, and a miscel-
laneous lot of repairs and fixtures. The plaintiff's general
ownership of said property was conceded, but defendants
claimed possession by virtue of a lien thereon for freight
and storage, as will hereafter appear. A trial was had in
the district court, which resulted in a verdict and judg-
ment for the defendants therein, and the cause was removed
into this court for review upon allegations of error by the
plaintiff. The material facts are as follows:

On the 20th day of February, 1890, the parties entered
into an agreement in writing whereby the defendants un-
dertook, as agents, to sell on commission the machinery of
the plaintiff at Grant, in Perkins county. The provisions
of said agreement, so far as material to the present contro-
versy, are as follows:

"The party of the second part [defendants], for and in
consideration of the appointment of such agency, which is
hereby accepted, and for the further consideration of the
commissions herein provided for, agree as follows:

"That said commissions shall be in full for all charges
for handling, exhibiting, selling, setting up, starting, stor-
ing, and securing payments, also for all other business and
expenses connected with the agency.

\*        \*        \*        \*        \*        \*        \*

"That said agent is to receive and pay transportation
from the factory on all machines, twine, and extras shipped
him, and provide, immediately on their arrival, proper
storage and careful protection of the same from sun, rain,
and wind, and to keep them clean and bright until sold
and delivered.

\*        \*        \*        \*        \*        \*        \*

"Or he will deliver the machines remaining on hand, complete and in good order at his depot, free from all freight and charges, as said first party may elect and demand. The said agent agrees that if any machines, twine, or extras remain unsold at or near the close of this season's sales, if either are ordered away, he will promptly deliver the same in good order at his depot free from all freight and charges; and the said agent is to keep the party of the first part harmless from all charges for storage, reshipping, cartage, and taxes, and to hold all unsold machines, and parts of machines, on hand for such time after the expiration of this contract (not to exceed one year) as may be desired by said party of the first part.

\*       \*       \*       \*       \*       \*       .\*

"The party of the second part hereby guaranties the sale in accordance with the terms of this contract, and the instructions herein contained, of all the machines herein ordered, and by him ordered, during the continuance of this contract, and promises and agrees that if any machines remain unsold on the 1st day of September, 1890, he will, at the option and upon the demand of the party of the first part, either execute and deliver to the party of the first part his two promissory notes, payable November 1, 1891, and November 1, 1892, with interest from August 1, 1891, each in a sum of principal equal to one-half the amount of said machines so remaining unsold at the prices named herein under head of 'List Prices and Commissions 1st,' less the 'commission' thereon, such notes to be indorsed by some responsible party or otherwise secured if required; or he will deliver the machines remaining on hand, complete and in good order, at his railroad depot free from all freight and charges, as said first party may elect and demand. The said agent agrees that if any machine twine or extras remain unsold at or near the close of this season's sales, if either are ordered away, he will promptly deliver same in good order at his railroad depot free from all

freight and charges. And the said agent is to keep for storage, reshipping, cartage, and taxes, and to hold all unsold machines, and parts of machines, on hand for such time after the expiration of this contract (not to exceed one year) as may be desired by said party of the first part.

\*          \*          \*          \*          \*          \*          \*

"Nothing herein contained shall be construed as allowing the party of the second part a lien on any part of the machines, twine, or extras, or proceeds thereof; it being expressly understood and agreed that the same is the property of the party of the first part, to be delivered it on demand."

The property in controversy was shipped to the defendants and received by them pursuant to the above agreement and remained unsold at the close of the season of 1890. During the month of October, 1890, there was a settlement between the parties of the business of that year and receipts given. In the month of June, 1891, the agreement not having been renewed, the plaintiff demanded the said property, which demand was refused, hence this action.

It is claimed that at the settlement mentioned Mr. Christensen, the plaintiff's agent, employed defendants to care for and store said machines and fixtures until the following April, and agreed that they should have a lien thereon for their storage charges, as well as the sum of $116 for freight paid, less the sum of $65 on account of a note executed by them in favor of the plaintiff. The agreement thus stated is denied by the plaintiff. It is further contended by the plaintiff that such promise, if made by Christensen, was in excess of his authority. To sustain their contention the defendants rely upon the testimony of Wesley Pringle, which, so far as it relates to the question under consideration, is as follows:

Q. You may state what, if anything, in the way of an agreement or contract you had with Christensen some time in October, when he was here and when you took the re-

ceipt in full, with reference to the machines that were left on hand.

A. The contract was this: There was a note in our settlement of $65.90 that was made payable on or before the 1st of April. That note was to be liquidated when the company settled. They were to take the machinery away from us, or we were to become their agents, and we were to pay that note, and if they moved the machinery we were to get our freights out of it, as we had paid Sayers & Walker, and that was to offset the note, and we were to have what was coming to us in the settlement. That is the reason that I had this receipt in full on this contract.

Q. State whether or not any computation was made by you and Christensen at that time with reference to the amount of freight that you had paid.

A. No, sir; there was not a word said. We did not figure out exactly the amount of freight, but we were to take these goods and store them and keep them until they wanted them, until they were called for by their agent and our freight paid to us, and we were to settle up and turn over the repairs and machinery to our successors, as they were turned over to us by Sayers & Walker when we took the goods.

Q. State what was said about storage.

A. The storage was to be paid to us when our freight was paid to us and the goods turned over to somebody else, provided we were not their agents, and we sent and told him that we never would be their agent as long as Christenson was the general agent for the company.

In our consideration of the question at issue we have assumed the agreement for a lien to have been made by Christensen as alleged, and that such agreement is within the scope of the latter's authority as the plaintiff's agent; but does it follow that the defendants acquired a lien thereby upon the property which they can assert in this action as against the plaintiff's right of possession? We

think not, for the reason that such agreement is not supported by any sufficient consideration. ( The rule is elementary that neither the promise to do nor the actual doing of that which the promisor is by law or subsisting contract bound to do is a sufficient consideration to support a promise in his favor. )Pollock, Contracts, 177; 2 Parsons, Contracts, 437; Bishop, Contracts, 420; *Deacon v. Gridley,* 15 C. B. [Eng.], 295; *Bartlett v. Wyman,* 14 Johns. [N. Y.], 260; *Reynolds v. Nugent,* 25 Ind., 328; *Ayres v. Chicago, R. I. & P. R. Co.,* 52 Ia., 478; *Conover v. Stillwell,* 34 N. J. Law, 54; *Hennessey v. Hill,* 52 Ill., 281; *Withers v. Ewing,* 40 O. St., 400.) It is apparent from the agreement set out above that the defendants had in the most explicit terms obligated themselves to store and care for the property in controversy for one year from the expiration thereof. They had also, in no uncertain language, stipulated that they should not have a lien upon said property, but would deliver it to the plaintiff on demand. Being bound by the terms of their own valid undertaking to render the services contemplated by the agreement with Christensen, it follows that the promise of the latter is *nudum pactum.* The agreement upon which defendants rely to support their alleged lien being void for want of consideration, the court should have directed a verdict for the plaintiff. The judgment is accordingly reversed and the cause remanded for further proceedings in the district court.

Reversed and remanded.