# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

AT

## JANUARY TERM, 1908.

---

TOMKE M. TARNOW ET AL., APPELLEES, V. ENSLEY CAR-
MICHAEL ET AL., APPELLANTS.

FILED JUNE 4, 1908. No. 15,040.

1. **Vendor and Purchaser:** COLLATERAL AGREEMENT: CONSIDERATION.
   A grantee in an executory contract for the sale and purchase of
   real estate refused upon the maturity of the contract to perform
   it, unless the grantor promised to procure for him the outstand-
   ing title of remaindermen in an entirely separate tract of land,
   and the grantor made such promise. *Held,* That the same was
   without consideration and unenforceable.

2. **Quieting Title:** REMAINDERMEN. The owner of a life estate in cer-
   tain land claimed to own the fee title, and asked the court to
   quiet the same against the claims of remaindermen, who, in
   turn, prayed for a decree establishing their title. *Held,* That,
   the title of the remaindermen being established, they were en-
   titled to a decree as prayed.

3. **Equity** will devise a remedy to meet emergencies, and will adjust
   the property interests of litigants whenever it .can do so without
   prejudice to the legal or equitable rights of any person.

4. **Vendor and Purchaser:** DOCTRINE OF CAVEAT EMPTOR. The doctrine
   of *caveat emptor* should be invoked whenever necessary that one
   may not be deprived of his rights, but it will not be applied to
   assist one in getting or keeping what he is not entitled to.

5. **Dower:** ESTOPPEL. A widow who has asked the court to order the
   lands of her deceased husband sold as an entirety by the ad-
   ministrator to pay debts must, after the confirmation of such
   sale, look to the proceeds for the satisfaction of her dower, and
   not to the land.

(1)

6. **Trusts: EQUITY.** Equity will permit the beneficiary of a trust fund to pursue the same and enforce his rights against it wherever it may be identified, and the conversion of the trust funds into land and the land into money will not prevent the enforcement of such rights.

7. ———: ———. In a proceeding instituted by an administrator to obtain license to sell the land of the deceased to pay debts, the widow appeared and asked the court to order the land sold in its entirety, and that from the proceeds she be paid $2,000 in lieu of her homestead. She accepted the same from the administrator after the sale, with which and other funds she purchased a tract of land which she afterwards sold to the administrator's grantee, who gave to her as a part of the purchase price a mortgage on the land for $2,000. The $2,000 was paid, received and distributed through the mutual mistake of the administrator, the purchaser and the widow, who thought that the administrator's deed conveyed the homestead free from the claims of the widow and the remaindermen. In an action by the widow to foreclose the $2,000 mortgage, *held*, that the widow is estopped from claiming a life estate in the homestead, and *held*, further, that the amount paid to the administrator by the purchaser for the interests of the remaindermen became a trust fund which is now merged in the mortgage, and for which the mortgagor is entitled to credit.

APPEAL from the district court for Jefferson county: JOHN B. RAPER, JUDGE. *Reversed with directions.*

*Heasty & Barnes* and *John C. Hartigan,* for appellants.

*C. H. Denney, contra.*

*F. L. Rain,* Guardian *ad litem.*

EPPERSON, C.

December 24, 1894, Eilert O. Franzen died intestate, leaving seven children and his widow, Tomke M. Franzen, now by marriage Mrs. Tarnow, the plaintiff in this suit. Deceased owned at the time of his death 124 acres of land in section 33, and 160 acres in section 34, township 2, range 4, in Jefferson county, Nebraska. All of said land was incumbered by a mortgage of about $3,200. He and his family occupied the land in section 34 as their home-

stead.   Decedent's estate was administered in the county
court of Jefferson county, and an administrator appointed,
who in November, 1895, filed in the district court a peti-
tion for a license to sell the real estate of said deceased
for the payment of indebtedness allowed by the county
court against the estate, and for the payment of the mort-
gage liens against the land.   A hearing was had upon the
administrator's petition, which resulted in the granting of
a license to him, authorizing him to sell all of the land of
the deceased to pay the general debts allowed against the
estate, amounting to $3,394, and the costs and expenses
thereof, amounting to $300.   Said license specifically pro-
vided that the sale should be made "subject to all liens
and incumbrances existing at the time of the death of the
deceased, and subject to the homestead interest in said
lands of Tomke M. Franzen to the amount of $2,000."
With this license as his authority, the administrator pro-
ceeded to advertise and sell the land.   The notice of sale
recited that the real estate described would be sold "in
pursuance of an order of C. B. Letton, one of the judges of
the district court for Jefferson county."   The administra-
tor's return to the court showed that he sold the 160-acre
tract to Carmichael for $4,000 and the 124-acre tract to
the widow, plaintiff herein, for $3,100.   The return made
by the administrator to the court did not show that he
had attempted to sell the homestead interest.   On the con-
trary, he reported that the sale was made "in pursuance
of the license granted on the 16th day of February, 1896."
The sale thus reported to the court was affirmed April 14,
1896.   On February 17, one day later than the granting
of the license, the plaintiff herein filed in that proceeding
a showing in the form of an affidavit, in which she said that
she was the widow of said deceased and the mother of his
children, naming them, five of whom were minors at that
time.   She set forth the homestead character of the land
in section 34.   She further alleged that it was to the best
interest of the creditors that all of the land belonging to
the estate should be sold and disposed of; that, by selling

it all, it would bring more money than it would if divided
and the homestead set out. She asked the court to order
all of said real estate sold, and that out of the proceeds
thereof, after the mortgage indebtedness upon said land
should be paid, she be allowed $2,000 in lieu of her home-
stead rights. This application was supported by a number
of affidavits of disinterested witnesses, to the effect that it
would be to the best interest of the said estate to sell the
land as an entirety. It is possible that these affidavits
were presented to the court prior to the granting of the
license. If so, it is apparent that the request therein
made was not granted. The administrator, misapprehend-
ing the authority given to him in the license, and believing
that he had authority to sell the land free from mortgage
liens and the homestead exemption, undertook to sell and
convey the same in its entirety. The evidence discloses
that the purchase price paid by each purchaser was the
value of the respective tracts of land. Perhaps the ad-
ministrator was misled by reason of the filing by the plain-
tiff herein of the affidavits and showing above described.
The plaintiff herself and Carmichael were also laboring
under the same mistake. After confirmation, although no
order was made by the court impressing the homestead
character upon the $2,000 of the purchase price paid by
Carmichael, the administrator paid that sum to the plain-
tiff herein, and she accepted the same in lieu of the home-
stead. She, in turn, repaid it to the administrator as a
part of the purchase price of the 124-acre tract in section
33. Carmichael thought he was buying the land free from
all liens and incumbrances. He paid its full value. The
administrator attempted to convey such title. The plain-
tiff herein considered that the homestead interest passed
to Carmichael by the administrator's deed.

About two years after the administrator's sale plaintiff
was desirous of disposing of the land she had purchased in
section 33, and on August 15, 1898, plaintiff and Car-
michael entered into a written contract, by the terms of
which plaintiff agreed to sell and Carmichael agreed to

purchase the 124 acres for the expressed consideration of $3,700, $300 payable in cash, $2,700 on March 1, 1899, Carmichael assuming a $1,100 mortgage given by plaintiff, then an incumbrance upon the land, and upon performance of the written contract on March 1, 1899, plaintiff was to convey said land to Carmichael by good and sufficient warranty deed. However, before the maturity of the contract, Carmichael became apprehensive that his title to the land in section 34 and plaintiff's title to the land in section 33 were defective because of the homestead interest of the children of Eilert O. Franzen, deceased. He refused to fulfil his contract for the purchase of the 124 acres. The parties then had further dealings, described in Carmichael's testimony as follows: "A day or two before the first of March (1899) we came over to straighten the thing up. * * * I told her I wouldn't go ahead and take the land without she would make some provision to make the deed all right. I wasn't quite satisfied with the title. * * * She objected at the time, and thought it was all right. I proposed to let the trade fall through. * * * She didn't want to do that. * * * I made the proposal I would take the land on them conditions if she would take a mortgage of $2,000 until she furnished a quitclaim deed, and to put it in the mortgage that she would give a quitclaim deed from all the heirs, and I would take the land. * * * She objected to that; but on the 23d of March she said she had made up her mind to fix it up that way." Thereupon, Carmichael took the deed to the land in number 33, gave plaintiff the additional $300 provided for in the contract, and executed and delivered to plaintiff his promissory note for $2,000, due in six years, and gave a mortgage on the land in section 33 to secure its payment, and assumed the $1,100 mortgage. The following stipulation appears in the mortgage securing the $2,000 note: "This mortgage is given as a part of the purchase money of this land, and it is expressly understood and agreed that before the principal is to be paid the said Tomke M. Tarnow is to furnish a quitclaim deed

from all the heirs at law of E. O. Franzen, now deceased, conveying the land above described, and also the west half of the northwest quarter and the north half of the southwest quarter of section thirty four (34), town number two (2), range number four (4), Jefferson county, Nebraska." Substantially the same indorsement was made upon the note secured by the mortgage. Thereupon, Carmichael took possession of the land and paid interest upon the mortgage indebtedness at 6 per cent. per annum for six years. Upon maturity of the $2,000 note, plaintiff demanded payment, which was refused by Carmichael because plaintiff had failed to procure the quitclaim deed from the Franzen heirs as agreed, and plaintiff brought this action to foreclose her mortgage.

In an amended petition, plaintiff set forth the facts as above shown, and alleged, further, that she received no consideration for executing the stipulation incorporated in the mortgage and indorsed on the back of the $2,000 note, in which she agreed to procure a quitclaim deed from the heirs to the real estate in controversy. Upon request of Carmichael, the heirs were made parties to the action, and each filed a cross-petition, alleging ownership of an undivided one-seventh interest in remainder in the land occupied by their father as a homestead. The prayer of each cross-petition is to the effect that the court adjudge that each is the owner of a one-seventh interest in remainder, and for general relief. Carmichael answered, requesting the court to determine to whom the $2,000 remaining due on the note and mortgage belongs, and that it may be paid accordingly, and prayed that his title to all the land be confirmed and quieted against the claims of all other parties to the action. The district court found that there was no consideration for the promise made by plaintiff to furnish such quitclaim deed, and adjudged that the heirs are not now entitled to the relief prayed for in their answers and cross-petitions; but inquired no further into the equities of the parties, and denied all relief to Carmichael, and decreed a foreclosure of the mortgage for the

full amount thereof. Carmichael appealed from the decree of foreclosure, and the heirs appeal from the order dismissing their cross-petitions.

It may be well to say at this time that, in view of the record had in the proceedings instituted by the administrator and of the other evidence in this case relative to the value of the land, the homestead interest was not sold by the administrator. The doctrine of *caveat emptor* applies to Carmichael. He was bound to take notice of the license and of the authority of the administrator and the power of the court. The evidence discloses that the land was capable of division, and that the homestead could have been appraised and set out by metes and bounds. The title, therefore, of the Franzen heirs in remainder has never been disturbed by any proceedings had. They are the owners, and have been at all times, of the homestead of their father, subject to the life estate of their mother, the plaintiff herein. But it cannot be said that the plaintiff is now the owner of the life estate. She joined with the administrator in asking for the sale of all the land, and accepted a part of the purchase price thereof in lieu of her life estate. She is estopped from now claiming such title or interest in the land. That interest has been sold and conveyed to Carmichael. It is argued by Carmichael that, in the event the homestead title cannot be impressed upon the $2,000 for which he gave his note and mortgage, he should not be required to pay the same until quitclaim deeds from the Franzen heirs are procured by the plaintiff, as stipulated. Plaintiff contends that her agreement to secure quitclaim deeds from the Franzen heirs to the land in 34 cannot be enforced, for the reason that there was no consideration given for such promise, as Carmichael was bound by contract to pay her this $2,000 on March 1, 1899. If we could resolve this question against her, the case could easily be disposed of. A discussion of this question is unnecessary. We have given it careful attention, and have concluded that such promise was without consideration. See *Esterly Harvesting Machine Co. v. Pringle,* 41

Neb. 265; *Allen v. Plasmyere*, 3 Neb. (Unof.) 187; 9 Cyc. 349; *McCarty v. Hampton Building Ass'n*, 61 Ia. 287; *King v. Duluth, M. & N. R. Co.*, 61 Minn. 482; *Abbott v. Doane*, 163 Mass. 433, 34 L. R. A. 33, and note. Whatever rights plaintiff had to the $2,000 fund represented by the mortgage remained unchanged by reason of her promise to secure quitclaim deeds.

There are broad principles of equity which call for recognition, and which must control the disposition of this case. At the time of the administrator's sale, when the plaintiff by her conduct sold her interest in the homestead to Carmichael, or, in other words, barred herself from asserting title therein against him, she was entitled to receive the value of her interest at that time. She was entitled to the then value of the use of the homestead during her life. Whatever was hers, she received, but she received more. The excess did not belong to her. It was paid to her by mistake. It became a trust fund in her hands. Equity will so regard it, and will follow it so far as it may be identified.

It is argued that the doctrine of *caveat emptor* bars Carmichael from asserting any right to the fund in controversy. Indeed, purchasers at judicial sales buy at their risk, and to them the doctrine of *caveat emptor* applies, and they cannot take title as against parties not in court, or against those whose interests are not disposed of in the proceeding in which the judicial sale is made. We have applied this doctrine as against Carmichael and in favor of the Franzen heirs because the court in the proceedings instituted by the administrator did not attempt to dispose of their interests, and had no power to do so. But can it be said in justice and equity that this court will enforce the doctrine of *caveat emptor* as against Carmichael and in favor of the widow to the extent that we will permit her to retain the money she was not entitled to which was paid to her through mistake, and that mistake occasioned partially through her conduct? The doctrine of *caveat emptor* does not prevent a purchaser

at a judicial sale from enforcing whatever legal or equitable rights may be preserved to him.   He is not the victim of every unfortunate contingency which may arise in a proceeding.   The doctrine should be invoked that one may not be deprived of his rights, nor to assist one in getting or keeping what he is not entitled to.   His rights to this money Carmichael could have enforced at any time.   Had the mistake been discovered prior to the confirmation of the administrator's sale, no doubt would exist but that the court could have given relief.   It could have been reached while it was in the land which was purchased in part by the fund.   It could have been identified after the making of the executory contract for the sale of the land purchased with it, and before the giving of the mortgage, which the plaintiff now seeks to foreclose.   Equity will not allow the conversion of land into money or money into land to stand in the way of doing justice.   Good conscience demands that a court of equity recognize the rights of all the parties and adjust them when it may be done without prejudice to any one. This court will not falter or hesitate upon mere technical grounds of procedure, when by so doing gross injustice would be done.   With all the parties now before us, there can be no doubt but that we can correct and place in order the respective rights of the parties, which otherwise would result in gross injustice to some of them.   That justice may prevail, a court of equity will devise a remedy to meet every new emergency, and will enforce the restitution of property when it has jurisdiction of the same. It is for such emergencies that courts of equity exist, and whenever a decree can thus be made upon the record of a case presented, although no precedent may be found, the court will so proceed.   But the enforcement of the rights to a trust fund, wherever the same may be identified, is doing no violence to equity jurisprudence.   The idea is not a new one. 3 Pomeroy, Equity Jurisprudence (3d ed.), sec. 1175 *et seq.*   Carmichael's money was converted into land.   That land was sold and the trust fund transformed

into a note and mortgage signed by the identical person who paid it by mistake. He is entitled to follow it and obtain that which in equity and good conscience belongs to him. Plaintiff, the holder of the trust fund, sought to foreclose the mortgage for the full amount thereof, which would operate to convert the trust fund into money in her hands. She is entitled to only a part of it. Her interest must be determined by taking into consideration the value of her life estate in the Franzen homestead as it existed when Carmichael bought it. The mortgagor is the beneficiary of the trust because he paid the fund through mistake for a title which he never acquired. He is entitled to reimbursement, and to have deducted from the mortgage the amount he paid for the title of the heirs which he did not acquire. He is entitled to interest upon that amount from the time he paid it, as the plaintiff has withheld it from him and she had the use of it. From the evidence before us we cannot make a computation, as we are unable to determine what was plaintiff's expectancy of life at that time. Additional evidence must be given that a computation may be made by the district court. Plaintiff is entitled to a lien upon the land in section 33 for the amount thus found due. We conclude, also, that the computation be made upon a 6 per cent. basis as a just and fair rate, and this is suggested by the parties, in that they agreed upon that rate in the mortgage. Carmichael has been rightfully in the possession of the property by the purchase of her life estate, and therefore need not account for its use.

It has been suggested that Carmichael might be entitled to subrogation to the $3,300 mortgage which was upon all of the Franzen land at the time of the administrator's sale, inasmuch as his money was used for the satisfaction of the mortgage. We cannot see wherein he is entitled to subrogation, or wherein it would avail him. As he is not required to account for the rents and profits during his occupancy of the land in controversy, he has received all the benefits which he would be entitled to re-

ceive if it were possible for the court now to decree him subrogated to the lien of the mortgage.

It is contended by the plaintiff that in the general distribution of her husband's estate she has received less than she was entitled to, taking into consideration the dower interest which the law would have given her, and which she claims she has never received. We consider it unnecessary to discuss this question at length. The following facts, however, stand out prominently in the record against her contention. By joining with her husband in the mortgages upon the land, she waived her dower interest therein to the extent of the mortgages. Considering the land worth $7,100, and deducting therefrom the amount paid in satisfaction of the mortgage and the value of the homestead, we find a surplus of but $1,761. Her dower interest at the time of the sale was not of very great value. And, again, in this connection, we mention the fact that she, as the widow of Franzen, made application to the court to have the land sold in its entirety, and therefore she should have looked to the proceeds of the sale for the satisfaction of her dower.

The Franzen heirs were not estopped from alleging their title to the homestead of their father by their failure to object to the confirmation of the administrator's sale. No record made in that proceeding challenged their attention to the attempted conveyance of the homestead by the administrator, and the court being without power to sell the homestead, and the heirs receiving no consideration for their interest therein, are not barred by the decree of confirmation nor by their own conduct from asserting the title they inherited. The district court should have affirmed their title to the homestead.

We therefore recommend that the judgment of the lower court be reversed and this cause remanded to the district court, with instructions to enter a decree quieting the title of the Franzen heirs as remaindermen in and to the homestead of their father, and further that an ac-

counting be had of the amount due to the plaintiff according to our findings and suggestions.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given above, the judgment of the district court is reversed and this cause is remanded to the district court, with instructions to proceed further in the matter as recommended in the opinion.

REVERSED.