STATE OF NEBRASKA EX REL. DON STENBERG, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, RELATOR, V. SCOTT MOORE, SECRETARY OF STATE OF THE STATE OF NEBRASKA, RESPONDENT.

571 N.W.2d 317

Filed December 12, 1997.   No. S-97-040.

Don Stenberg, Attorney General, L. Steven Grasz, Dale A. Comer, and Fredrick F. Neid for relator.

David C. Mussman and Linda W. Rohman, of Erickson & Sederstrom, P.C., for respondent.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

This is an original action filed by the Attorney General of the State of Nebraska (relator) against the Secretary of State (respondent) to determine the rights of certain affected noncertificated employees to retirement benefits under the provisions of the School Employees Retirement Act (Act), Neb. Rev. Stat. §§ 79-901 to 79-977.01 (Reissue 1996).

## FACTS

This is a civil action in which the State of Nebraska is a party. The action involves deposits and contributions which the state has made and is required to make to the School Retirement Fund pursuant to § 79-958 (previously codified at Neb. Rev. Stat. § 79-1531 (Supp. 1995)). The Act provides for membership in the school retirement system and for the funding and payment of certain retirement benefits to school employees in the State of Nebraska. In general, two types of employees are covered by the system: (1) certificated employees, such as teachers and administrators, who are required to hold certificates, diplomas, or other credentials and (2) noncertificated employees, who are not required to hold certificates or other credentials.

At all times relevant to this case, the Public Employees Retirement Board (PERB) was vested with general administration of the school retirement system. PERB was authorized to

hire a director and staff to administer the school retirement system. The director and staff were commonly known as the Nebraska Public Employees Retirement System (NPERS). PERB and NPERS are collectively referred to as "the administrators of the system."

On January 1, 1978, the Act was amended to require all noncertificated employees hired after July 1, 1978, to participate in the school retirement system. Noncertificated employees who had elected not to become part of the system prior to January 1, 1978, had the right to file an election to be included in the system. Pursuant to Neb. Rev. Stat. § 79-1509.02 (Reissue 1987) (now codified at § 79-912), such elections had to be filed after January 1 and prior to July 1, 1978. Noncertificated employees who filed such an election were to be treated as new employees, and no prior service credit was to be granted. Some of the nonparticipating noncertificated employees hired prior to January 1, 1978, had not filed an election prior to January 1, 1978, and thus, under the provisions of § 79-1509.02, were ineligible to participate in the system after June 30, 1978, unless they had a break in service and were reemployed.

Neb. Rev. Stat. § 79-1509.03 (Reissue 1994) (now codified at § 79-913) permitted all noncertificated employees who were employed during the period between January 1 and June 30, 1978, to file an election to opt out of membership in the system. Noncertificated employees who filed such an election waived all rights in the system, except refund of any of the noncertificated employees' accumulated contributions.

After June 30, 1978, two groups of noncertificated employees were not eligible to participate in the system under the provisions of the Act as amended. The first group consisted of those nonparticipating noncertificated employees hired before January 1, 1978, who failed to file an election to be included under § 79-1509.02. The second group consisted of those noncertificated employees hired between January 1 and June 30, 1978, who filed an election opting out of the system pursuant to § 79-1509.03. The above-described two groups of noneligible noncertificated employees are referred to as "affected noncertificated employees."

During early 1995, the Nebraska Retirement Systems Committee of the Nebraska Legislature and the administrators

of the system learned that following July 1, 1978, the effective date of the amendment to the Act, affected noncertificated employees were nonetheless allowed access to the system contrary to §§ 79-1509.02 and 79-1509.03. The practices of the administrators of the system and the school districts had allowed these affected noncertificated employees to enroll and participate in the system after July 1.

Following the July 1, 1978, effective date, the administrators of the system enrolled all known affected noncertificated employees hired prior to January 1 who had opted out of the system prior to January 1, but who had not specifically filed an election to opt out of the system during the period of January 1 to June 30. In a letter on or about December 7, 1977, the director of PERB advised all school officials that any noncertificated employee hired prior to January 1, 1978, who failed to file an election before July 1 would be enrolled in the system.

Beginning in 1980, affected noncertificated employees who had opted out of the system prior to January 1, 1978, and opted out of the system a second time during the period between January 1 through June 30 were subsequently allowed to participate in the system, contrary to § 79-1509.02. Following the fall of 1979, noncertificated employees hired during the period of January 1 through June 30, 1978, who elected to opt out of the system during that same time period were later allowed to participate in the system, contrary to § 79-1509.03.

The administrators of the system made representations and took actions regarding noncertificated employee membership which conflicted with §§ 79-1509.02 and 79-1509.03. For example, the 1980 handbook prepared for school employees by the administrators of the system stated through a question-answer format that the affected noncertificated employees employed prior to July 1, 1978, who had previously elected out of the system by filing nonmembership forms could join the system at any time by filing a membership application. This same question-answer format appeared in handbooks distributed to school employees until 1985, when the explanation was revised. Beginning in 1985 and continuing through early 1995, the handbooks explicitly stated that any affected noncertificated employee could elect membership at any time.

School districts and the administrators of the system distributed these handbooks to the affected noncertificated employees, provided membership forms for such affected noncertificated employees, collected completed membership forms, and returned said forms to the administrators of the system. The administrators of the system reviewed the forms, created and maintained membership files, collected contributions, and paid benefits for such affected noncertificated employees.

It was the intent of the administrators of the system that the affected noncertificated employees would rely on the information contained and distributed concerning the eligibility criteria for membership in the system. It was mistakenly assumed that the information was accurate and conformed to the laws of Nebraska, and it was the consistent practice of the administrators of the system from July 1, 1978, to early 1995 to enroll in the system all noncertificated employees. The administrators of the system instructed the school districts to supply membership forms, maintain membership files, collect contributions, and pay benefits. The affected noncertificated employees who filed membership forms have been treated since their enrollment as if they were members of the system.

Each affected noncertificated employee was required to make contributions to the system. All affected noncertificated employees were required to accumulate 5 or more years of creditable service following enrollment in the system as a condition to receive retirement benefits. The State of Nebraska and employing school districts have made contributions on behalf of all the affected noncertificated employees as otherwise required by law, except for some affected noncertificated employees who have not filed an election to be included in the system as of the date of this action.

Upon discovery of the practices of the administrators of the system, the Nebraska Retirement Systems Committee requested NPERS staff to identify the number of affected noncertificated employees and the amount of contributions which were made by and on behalf of the affected noncertificated employees. As of February 29, 1996, such estimate identified the number of members to be in excess of 500 employees, and the estimated contributions from all sources by and on behalf of those affected noncertificated employees was in excess of $9 million.

Some of the affected noncertificated employees allowed to participate have retired or become disabled and are currently receiving retirement annuity or disability benefits. Some affected noncertificated employees are deceased, and their beneficiaries are currently receiving benefits from the system.

The administrators of the system have refused to apply §§ 79-1509.02 and 79-1509.03 to remove such affected noncertificated employees from the system, and PERB, by letter dated October 30, 1996, has notified the relator that it will not enforce the provisions of the law so as to deny benefits to those affected noncertificated employees.

## ANALYSIS

The applicable statutes, §§ 79-1509.02 and 79-1509.03, provided as follows:

> All school employees not required to hold a certificate, diploma, or credentials to practice in a professional capacity who had previously elected not to be included in the school retirement system pursuant to section 79-1509 may, after January 1, 1978, and prior to July 1, 1978, file with the retirement board an election to be included in the membership of the retirement system, but such employees shall be treated as new employees and no prior service credit shall be granted.

§ 79-1509.02.

> All school employees not required to hold a certificate, diploma, or credentials to practice in a professional capacity who are employed after January 1, 1978, and prior to July 1, 1978, shall have until June 30, 1978, to file with the retirement board an election not to be included in the membership of the retirement system . . . .

§ 79-1509.03.

The relator argues that the affected noncertificated employees have contract rights which vested upon enrollment and participation in the system and that application of the provisions of the Act to deny participation and retirement benefits would unconstitutionally interfere with such employees' contract rights. The relator claims that the affected noncertificated employees participated in the system at the request and solici-

tation of PERB and the administrators of the system and that they have vested contractual rights to participate in and receive benefits from the system.

The respondent, who is required by law to represent the Legislature in support of the laws it passes, argues that the affected noncertificated employees' membership and participation in the system are contrary to law because such employees do not meet the eligibility criteria established for membership and participation in the system. The respondent asserts that no contract rights exist because the employees' membership and participation in the system are illegal and that, therefore, any contract between the system and the affected noncertificated employees is illegal, void, and unenforceable.

Contending that such employees have not met the eligibility requirements of the Act, the respondent urges us to choose between the lesser of two evils: (1) permitting an agency of the state government to ignore the law or (2) abrogating the contractual obligation of the relator to the affected noncertificated employees. The respondent claims that since the only way the system can fulfill the contractual obligation is to violate the law it is charged with administering, abrogation of the alleged contractual obligation to such affected persons is both reasonable and necessary, and not an unconstitutional impairment of contract.

The issue is whether the 500-plus affected noncertificated employees should be allowed to remain in the system despite the fact that such participation would not comply with the exact letter of the law. We hold that under these unusual and compelling facts, the relator is entitled to equitable relief.

Original jurisdiction in this case is based upon the fact that the state is a party and has an interest relating to revenue. See, *State ex rel. Douglas v. Gradwohl*, 194 Neb. 745, 235 N.W.2d 854 (1975); *Anderson v. Herrington*, 169 Neb. 391, 99 N.W.2d 621 (1959). The word "revenue" as used in article V, § 2, of the Nebraska Constitution, giving the Supreme Court original jurisdiction of a case relating to revenue, is broad and general, and includes all public money which the state collects or receives from whatever source and in whatever manner. *Wilson v. Marsh*, 162 Neb. 237, 75 N.W.2d 723 (1956) (original action in

Supreme Court against Secretary of State for adjudication of certain district judges' rights involving Judges Retirement Act).

The petition for this original action was captioned as one to determine the constitutionality of a statute, but the relief requested is generally equitable in nature. Equity acquires jurisdiction over an action when the averments of the pleadings and the relief sought indicate that the main object of the action is equitable in nature. *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995); *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988). Where a court of equity has acquired jurisdiction of a case, it will make a complete adjudication of all matters properly presented and involved in the case and will ordinarily grant such relief, legal and equitable, as may be required. *Synacek v. Omaha Cold Storage, supra; Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

It is a longstanding principle that equity is reluctant to permit a wrong to be suffered without a remedy, and "a court of equity will devise a remedy to meet every new emergency." See *Tarnow v. Carmichael*, 82 Neb. 1, 9, 116 N.W. 1031, 1035 (1908). "It is for such emergencies that courts of equity exist, and [where relief may be granted], although no precedent may be found, the court will so proceed." *Id.* This principle was affirmed in *Redding v. Gibbs*, 203 Neb. 727, 739, 280 N.W.2d 53, 60 (1979), when we cited Chief Justice Cardozo's dissent in *Graf v. Hope Building Corp.*, 254 N.Y. 1, 171 N.E. 884 (1930), as saying: " 'Let the hardship be strong enough, and equity will find a way, though many a formula of inaction may seem to bar the path. . . .' "

In *Jennings v. Dunning*, 232 Neb. 366, 440 N.W.2d 671 (1989), this court held that the State of Nebraska could be subject to equitable principles under compelling circumstances where right and justice so demanded and in the interest of preventing a manifest injustice. Right and justice demand that the affected noncertificated employees impacted by this litigation be allowed to participate in the system. Allowing the state to exclude the affected noncertificated employees from the system after they have made contributions for up to 17 years would be manifestly unjust. Therefore, we find that compelling circumstances exist so that this court may devise an equitable remedy and apply that remedy against the state.

In *Redding, supra*, we recognized that equitable relief could be granted even if all the elements of the doctrine of equitable estoppel were not present. Likewise, we are guided in this case by the doctrine of equitable estoppel in fashioning a unique remedy for the affected noncertificated employees.

PERB is charged by law with the duties and responsibilities of administering the system and adopting rules and regulations for that purpose. See § 79-904 (previously codified at Neb. Rev. Stat. § 79-1503 (Supp. 1995)). As pointed out by the relator, it is significant that such administrators consistently interpreted and applied the powers of the Act to permit such affected non-certificated employees to enroll in the system after June 30, 1978. It is also significant that the amendment to the Act required all employees hired after June 30, 1978, to be enrolled in the system. The administrators mistakenly applied the provisions of the Act to allow all noncertificated employees whose employment continued after June 30, 1978, to be eligible for membership in the system and have applied this interpretation without deviation for 17 years to permit membership by the affected noncertificated employees.

Here, each affected employee relied upon the administrative practices and representations made by the administrators of the system. Each employee made the required contributions to the system. Each employee was required to accumulate 5 years or more of creditable service prior to receiving retirement benefits. Many of the employees have participated in the system for 17 years and have made retirement contributions for that time. Even if their premiums were returned, the employees would not receive the benefits of membership in the system, and it would be manifestly unfair and unjust to now remove these employees from the system and deny them their retirement benefits.

## CONCLUSION

We conclude that equitable principles require that the affected noncertificated employees be permitted to continue participation in the system.

JUDGMENT FOR RELATOR.