MERRIHEW v. PARROTT et al.　(No. 135/42.)

(Supreme Court, Appellate Division, Third Department. July 1, ....)

1. LIENS ☜7—LIEN ON REALTY—BASIS.

One who increases the value of realty by the labor and materials he bestows on the buildings thereon has an equitable lien t.. ....

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 2 ....; Dec. Dig. ☜7.]

2. DESCENT AND DISTRIBUTION ☜129—LIABILITY OF HEIRS—EQUITABLE LIEN.

Where a surviving partner transferred firm property to a servant, taking back a secret agreement for reconveyance, one-half of which property was later determined to belong to the heirs of his deceased partners, and the servant purchased a farm with half of the property and engaged the plaintiff to repair the buildings, which was done, plaintiff, having knowledge of the transfer to the servant, but not of the secret agreement, could enforce an equitable lien against the property in the hands of the heirs, to whom the surviving partner, after reconveyance to him by the servant, voluntarily conveyed the property, since it would be inequitable that the surviving partner's grantee should receive the farm as a gift, leaving plaintiff without compensation for his improvements.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 471; Dec. Dig. ☜129.]

3. DESCENT AND DISTRIBUTION ☜138—LIABILITY OF HEIRS—AVOIDANCE OF MULTIPLICITY OF SUITS.

A surviving partner transferred property to his servant, with a secret agreement of reconveyance, one-half of which property was firm assets. With half the property the servant... ght a farm and engaged plaintiff to improve the buildings. Plaintiff... knowledge of the transfer of the property to the servant, but not of his agreement to reconvey. Thereafter the servant reconvey... to the surviving partner, who voluntarily conveyed to his heirs, who were also heirs of the deceased partners. The grantor was incompetent at the time of such conveyance. Plaintiff sued the grantees in the partner's lifetime to enforce an equitable lien on the property. Held that, after the partner's death, a court of equity could entertain the action against the grantees as heirs of the partner, as one enforcing a liability against a decedent's property in the hands of his heirs by descent, in order to avoid a multiplicity of suits.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. § 495; Dec. Dig. ☜138.]

**4. EQUITY ☞1—TECHNICAL RULES—PRECEDENTS.**

A court of equity need not search for precedents, or worry about the technical rules of law.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1, 3, 6; Dec. Dig. ☞1.]

Appeal from Special Term, Clinton County.·

Suit by Claud C. Merrihew against Cynthia Parrott and others. Judgment dismissing the complaint, and plaintiff appeals. Reversed, and judgment entered for plaintiff.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Seth S. Allen, of Plattsburgh, for appellant.

Weeds, Conway & Cotter, of Plattsburgh (Frank E. Smith, of New York City, of counsel), for respondents.

JOHN M. KELLOGG, J. The plaintiff, a contractor and builder, made extensive improvements upon the buildings on the Brown farm, of the value and agreed price of $3,736.75, under a contract with Mrs. Parrott, made by her husband, representing her, and this action is brought to impress an equitable lien upon the farm therefor. John H. Kingsbury was the sole survivor of the firm of Kingsbury Bros., composed of himself and three brothers, who had always lived upon a farm formerly belonging to their father, and which they inherited from him. The three brothers had died intestate, unmarried, and without issue; the surviving brother was unmarried and without children. The defendant Mrs. Carter was a sister, and the defendants Butterfield, Metcalf, and Mrs. Burns, since deceased, were the children of a deceased sister. In 1907 Mrs. Carter brought an action to partition the home farm, and John H. Kingsbury was very much offended, and knew that the relatives were making a claim upon him on account of the copartnership assets. He determined to put himself in a position to bring about a favorable settlement with them, and for that purpose, and to keep the property from the relatives, March 27, 1907, he delivered to one Parrott, his servant, in whose family he lived, and in whom he had entire confidence, a tin box containing about $23,000 in money and securities, and executed a paper transferring the same to him absolutely, taking back from him a secret agreement, by which Parrott was to return the property to him when he desired it. The day before the transaction Kingsbury requested the plaintiff to come to his place to witness important papers, saying his attorney was to be there. The attorney and plaintiff, with a notary, were present when the assignment was executed, and witnessed it. The assignment of the property to Parrott was read by the plaintiff to Kingsbury at his request. Plaintiff had no information as to the secret agreement. The money and securities so delivered and assigned to Parrott were the property of the firm, in which in fact Kingsbury had a one-half interest, his sister a one-quarter interest, and the children of a deceased sister the remainder. From the securities Parrott, April 18, 1907, expended $12,000 in the purchase of the Brown farm, taking the deed in his

wife's name. This action was brought September 20, 1908, and the trial began December 16, 1913. Kingsbury died intestate January 14, 1912, but his deposition was taken in an earlier litigation before the surrogate. Mrs. Burns, a party to the action, died intestate, without children, before judgment, and her surviving husband conveyed any interest she had in the property in question to the defendants Butterfield, Carter, and Metcalf.

Shortly after the purchase of the Brown farm Parrott and his wife made a contract with plaintiff for extensive improvements upon the farm buildings, which were in bad state of repair, and the repairs were reasonable and necessary. It is clear that when the plaintiff began to repair the buildings Kingsbury knew that the farm was purchased with his money, that the title was in the name of Mrs. Parrott, and that the Parrotts were holding the farm for him. He says Parrott told him he was having some work done by the plaintiff, and he supposed Parrott was going to pay for it. He knew that Parrott and his wife had no money, and that plaintiff could only be paid from the moneys and securities Parrott had received from him. He was living with the Parrotts, and was at the farm several times while the plaintiff was making the improvements, and knew that he was doing work for Parrott. About the time plaintiff began to work upon the buildings, it is not quite clear whether before or after the work was actually begun, Butterfield brought an action against Kingsbury, the Parrotts, and the other heirs, seeking to avoid the transfer to Parrott, and asking for an accounting of the affairs of Kingsbury Bros., and restraining the Parrotts from disposing of the Brown farm or the securities Parrott had received from Kingsbury. The complaint alleged the purchase of the Brown farm with the money and securities received from Kingsbury. That action did not come to trial, but resulted in a settlement, by which Kingsbury took a conveyance of the Brown farm. The personal property was turned over to the other heirs, Kingsbury giving the Parrotts an indemnity agreement, reciting that the plaintiff had filed a mechanic's lien against the farm, that Kingsbury was not a party to the employment, that Brown had transferred the farm to Kingsbury, and he agreed that in the event the plaintiff succeeds in establishing and enforcing said lien, or any part thereof, as against the property, or personally against Parrott or his wife, to defend and indemnify them; he being subrogated to all rights of said Parrotts, or either of them, as against the plaintiff, they to give him immediate notice of any claim against them. At the time he received the conveyance from the Parrotts, Kingsbury was the owner of the farm, and had settled with the other heirs. Nevertheless, a few days afterwards, he voluntarily, without consideration, transferred the farm to them, reserving a life estate in himself. He had no other property at the time. The plaintiff, having filed a mechanic's lien against the property, recovered a personal judgment against Mrs. Parrott. The notice of lien having been defective, it could not be foreclosed against the property.

[1, 2] The plaintiff has increased the value of the Brown farm by the labor and material he put upon the buildings, and when the Par-

rotts conveyed the property to Kingsbury he realized the benefits of the plaintiff's acts. In fact, the repairs were contracted for and .caused by Kingsbury's agents, and he is responsible therefor. If the farm had remained the property of Kingsbury, clearly the plaintiff could get his pay. The real question is: Could Kingsbury, by giving away the property to parties who knew or were chargeable with knowledge of the facts, accomplish the purpose of depriving the plaintiff of the value of the improvements he had made upon the property? The Parrotts are insolvent, and the plaintiff can recover nothing unless he can follow the farm. It is inequitable that the grantees of Kingsbury should receive the farm as a gift, and the plaintiff receive no compensation for the improvements. If no conveyance had been made by Kingsbury, the property would have gone at his death to the parties who became his grantees, subject to his just debts. The only effect of the conveyance, therefore, is to deprive the plaintiff of his pay. That was evidently the intention of Kingsbury. It is a reasonable conclusion that the grantees had knowledge of the facts, and were aiding him in carrying out his purpose, and believed that by taking the conveyance they were getting the farm free from the debt which Kingsbury rightfully owed for its improvement. The Parrotts had no means of buying the Brown farm, or improving it, except from the moneys received from Kingsbury. From all the facts, and from the apparent relations between Kingsbury and the Parrotts, it is immaterial when the plaintiff acquired knowledge of the Butterfield action. If the property was actually given to Parrott, as plaintiff believed, he could hold one-half of the property transferred in spite of the relatives. He knew that Kingsbury knew of the purchase of the farm and the improvements, and was justified in believing that it was done with his knowledge and consent. The finding, therefore, that the plaintiff did not act in good faith and had knowledge of the action, does not prevent his recovery, and is not justified by the evidence. He is not seeking to hold the interest which the other defendants had in the property of the Kingsbury Bros., but is only seeking to hold the property which all concede was the property of Kingsbury after the settlement, to wit, the Brown· farm. The Butterfield action and its settlement are not of great importance, except to show that Kingsbury owned the Brown farm after the partnership matters were fully settled. The fact is, as a matter of substance, that Kingsbury transferred to Parrott about $11,500 of his property, apparently making him the absolute owner thereof, and that plaintiff had knowledge of that fact; that the Parrotts, with the money and securities so transferred, bought the Brown farm, and with the knowledge and consent of Kingsbury, after he knew they were holding it as his agents, the plaintiff made valuable improvements upon the farm, and that no one has received any benefit from the improvements except Kingsbury and his heirs; that the Parrotts in fact never had any interest in the farm, but held and managed it for Kingsbury under a secret trust. If this action were for the purpose of impressing a trust upon the interest in the property transferred to Parrott which by right belonged to the next of kin of the other brothers, the knowledge of the plaintiff of the Butterfield action and his good faith might be material.

But, as we have said, this action proceeds upon the theory that no claim is made upon them on account of that interest.

The court found that in March, 1907, Kingsbury was 78 years of age, or thereabouts, and was physically and mentally enfeebled and unfit for the proper transaction of business. If this means that he was mentally unable to employ the Parrotts to transact his business for him, to purchase the farm for him and improve it, it must also mean that he had not the capacity to deed the farm to the defendants in this action, and upon that theory he died intestate. The plaintiff was present when the transfer to Parrott was made, at which time Kingsbury had the assistance of counsel. He had the right to believe that the conveyance was valid, and for a proper purpose, and by a competent grantor. The Butterfield action, when known to the plaintiff, could have indicated to him only that one-half of the property transferred to Parrott might be taken from him. The settlement of that action shows clearly that Kingsbury was entitled to half of the property, and the other next of kin of the deceased brothers to the other half. It is not claimed that the Parrotts were not able to take care of themselves, or that they ordered unnecessary or improvident improvements. If Kingsbury was old and foolish, his representatives had possession of all their faculties, and it is not claimed that the plaintiff was to receive an excessive price for the improvements. The plaintiff's labor and money have improved the property, and the plaintiff should, under any circumstances, be paid the amount which the improvements have added to the value of the property. By making a settlement with Kingsbury, the other parties to the action recognized his ability to do business, and, having received the deed from him, his heirs recognized his competency to give away his property. The conveyance to the Parrotts was not necessarily the act of an incompetent man. He thought, and probably his attorney thought, he was doing a wise thing by apparently dispossessing himself of the property, so that he could make a favorable settlement with the heirs of his brothers. A man in every way competent to do business might suppose that by openly divesting himself of all of his property he could make a more favorable adjustment with his creditors. The morality of the transaction might be questioned. As a matter of fact, it is an expedient often resorted to.

[3, 4] If we conclude that Kingsbury was incapable of transacting business, and disregard the deed to the defendants, then they received the property, not by deed, but as his heirs, and under section 1843 of the Code of Civil Procedure an action could be brought at the proper time to charge the heirs of the debtor to the extent of the value of the property inherited. Therefore we may assume that Kingsbury was liable for the plaintiff's claim, and, he having died, leaving no property but the Brown farm, that that farm will eventually be liable for the plaintiff's claim. But the action was brought in his lifetime to enforce an equitable lien upon the property, and in order to avoid a multiplicity of suits the court having jurisdiction of the matter may now administer justice. If the plaintiff was not proceeding in good faith, perhaps he should recover only the amount which his improve-

ments have actually enhanced the value of the property; but in the absence of evidence upon that subject we may fairly assume that the improvements benefited the property to the extent of their actual cost. If we assume that the deed was valid, and that Kingsbury was able to do business, the deed to the defendants was evidently intended by the parties to transfer the property to Kingsbury's heirs free of the plaintiff's claim, and was a fraud upon the plaintiff to the extent of his just claim. A court of equity need not search for precedents, nor worry about the technical rules of law. When it is established, as we find the facts to be, that the plaintiff has greatly improved the value of the Brown farm, and that Kingsbury was responsible to him for the value of such improvements, and that he transferred all of his property and the farm to the other defendants in this action for the purpose of evading the payment of that just claim, there is nothing left for a court of equity to do but to direct that the plaintiff's claim be charged upon the interest which the defendants Carter, Butterfield, and Metcalf have in said farm.

The judgment should therefore be reversed upon the law and the facts, and judgment entered declaring the amount due the plaintiff a lien upon the Brown farm as against the defendants last named, and superior to any interest they have therein, together with the costs in the trial court and in this court. The court disapproves of the finding of fact that John H. Kingsbury had no knowledge of the purchase of the Brown farm by the Parrotts, or either of them; also of the eighth, tenth, and eleventh findings of fact; also of the finding that the said Kingsbury, at the time of the transfer to the Parrotts, was too physically and mentally enfeebled for the transaction of business; and the court finds that at the time of the settlement between the Parrotts, Kingsbury, and the defendants Carter, Burns, Butterfield, and Metcalf, they all had knowledge of the plaintiff's claim, and that when the conveyance was made by Kingsbury of the Brown farm to the said Carter, Burns, Butterfield, and Metcalf, they each intended by such conveyance to defraud and deprive the plaintiff of his claim and the means of collecting the same. All concur, except SMITH, P. J., not voting.