## IN RE PERRY.

[No. 12.232.    Filed July 2, 1925.    Rehearing dismissed October 7, 1925.]

1. AMICUS CURIAE.—*"Amicus curiae" defined.*—"Amicus curiae" is one who, as a standerby, is permitted to inform the court as to a matter of law when the judge is in doubt or mistaken. p. 462.

2. AMICUS CURIAE.—*Rights of amicus curiae defined.*—An amicus curiae is not a party to the suit or proceeding before the court and has no control over it; he can file no pleadings

or motions, cannot reserve an exception or take an appeal; he may, on leave, file briefs, argue the case and introduce evidence. p. 462.

3. AMICUS CURIAE.—*Party cannot complain if court grants privilege of appearing as amicus curiae.*—Since an *amicus curiae* can do nothing other than advise the court, a party to the action or proceeding has no cause to complain if the court grants the privilege of appearing as *amicus curiae.* p. 462.

4. AMICUS CURIAE.—*Overruling motion to strike out petition of amicus curiae for permission to appear not reversible error.*—Since an *amicus curiae* can do nothing other than advise the court, and no action of his can affect the legal rights of a party to the action, there could be no reversible error in overruling a motion to strike out the petition of the person seeking permission to appear as *amicus curiae* and permitting him to be heard. p. 462.

5. ADOPTION.—*Guardian of child cannot be made party to adoption proceeding and cannot be given any right to appear and object to the adoption.*—The guardian of a child cannot be made a party to a proceeding to adopt such child and cannot be given the right to appear and object to the adoption. p. 463.

6. ADOPTION.—*Adoption proceedings are judicial in character, and the order of adoption is governed by same rules as ordinary judgments.*—Adoption proceedings are judicial in character, and an order of adoption is governed by the same rules of law as other judgments and decrees. p. 463.

7. JUDGMENT.—*Filing of application to be heard as friend of the court would not give court any power over judgment at subsequent term.*—Filing of application to be heard as a friend of the court, though made within the term at which a judgment was rendered, would not keep the cause in court so as to give the court any power over the judgment at a subsequent term. p. 463.

8. ADOPTION.—*Court has power to vacate a decree of adoption during term but not afterward.*—Court has power and authority to vacate a decree of adoption at the term at which it was made, but not after the expiration of the term on the application of an *amicus curiae,* even though his application was filed within the term, as he is not a party to the proceeding. p. 463.

9. ADOPTION.—*Guardian's application to appear as amicus curiae in adoption proceeding held not to give court power to vacate order of adoption after close of term.*—Application of the guardian of a child to appear as a friend of the court for purpose of advising the court that the adoption should not have been ordered, though made within the term after the

order was made, will not give the court power to vacate the order of adoption after the close of the term.    p. 464.

10. ADOPTION.—*Adoption of children unknown to common law.* —The right of adopting children was unknown to the common law, it having been taken from the Roman law.    p. 465.

11. ADOPTION.—*Petition must allege all facts required to give court jurisdiction.*—The petition required by the statute (§914 Burns 1926, §869 Burns 1914, §824 R. S. 1881), is jurisdictional in character, and the facts required to give the court jurisdiction must be alleged therein.    p. 465.

12. ADOPTION.—*Allegation that child to be adopted resides in county not necessary to petition.*—It is not necessary, in a petition for adoption, to allege that the child whose adoption is sought resides in the county in which the petition is filed. p. 465.

13. EVIDENCE.—*Courts judicially know that Zionsville is in Boone county.*—The courts judicially know that the town of Zionsville is in Boone county.    p. 465.

14. ADOPTION.—*Presumed that evidence justified finding that residence of adopted child's guardian was residence of child.*— Where a court ordered the adoption of a child which was alleged to be in the custody of its guardian in the county, it will be presumed that, at the hearing on the petition for adoption, evidence was introduced sufficient to justify the court in finding that the residence of the guardian was the residence of the child.    p. 465.

15. GUARDIAN AND WARD.—*Force and affect of order of court as to custody of child placed in custody of guardian, as between parties.*—Order of court, made in appointing guardian of child, giving custody and care of child to guardian, controlling as to parent and guardian, but not necessarily so as between the guardian and one that thereafter adopted the child.    p. 467.

16. GUARDIAN AND WARD.—*In habeas corpus proceeding for custody of ward, court guided by what is for best interest and welfare of child.*—In a habeas corpus proceeding between a guardian of a child and an adopting parent for the custody of the child, the court will be guided solely by what is for the best interest and welfare of the child.    p. 467.

17. ADOPTION.—*Allegation of residence of child under guardianship held sufficient to give court jurisdiction of adoption.*— An allegation in a petition for the adoption of a child under guardianship that the child was in the care and custody of its guardian, "as her guardian," and that he resided in the county where the adoption was ordered, was sufficient to give the court jurisdiction of such child.    ·p. 468.

18. DOMICILE.—*Child's residence follows residence of guardian having legal custody of the child.*—Where court having juris-

diction to appoint a guardian for a child legally orders that the custody thereof be transferred to the guardian, the residence of the guardian becomes the residence of the child. p. 468.

19. ADOPTION.—*Order awarding custody of child to adopting parent not binding on guardian having legal custody who is not a party.*—In a proceeding to adopt a child which is under guardianship, a provision in the order of adoption awarding the custody to the adopting parent is not binding on the guardian. p. 469.

20. ADOPTION.—*Neither adopting parent nor guardian of child has absolute right to custody of child.*—Where a child in the legal custody of its guardian was ordered adopted, neither the adopting parent nor the guardian has an absolute right to the custody of the child, notwithstanding the court ordering the adoption awarded the custody to the adopting parent, but it is for the proper court to decide whether either shall have that custody. p. 469.

From Boone Circuit Court; *Frank E. Hutchinson,* Judge.

Proceeding by May H. Suter to adopt Mary Elizabeth Perry. From an order vacating and setting aside the order of adoption and dismissing the petition, petitioner appeals. *Reversed.* By the court in banc.

*Bell, Kirkpatrick, McClure & Elliott, Roy W. Adney* and *Lloyd McClure,* for appellant.

*Frank S. Roby* and *R. P. Bundy,* for appellee.

McMAHAN, J.—On March 1, 1924, May H. Suter, hereafter designated as "petitioner," filed her petition in the Boone Circuit Court for the adoption of Mary Elizabeth Perry.

The petition stated that the petitioner was a school teacher, residing in Howard county, Indiana; that Mary Elizabeth Perry was a female child, eight years of age, the child of Ruth E. Perry and Samuel P. Weller and born in lawful wedlock; that her father died in 1916; that his widow, the mother of said child, later married Earl C. Perry; that thereafter said Mary E. Perry was adopted by said Ruth E. Perry

and her husband Earl C. Perry, and her name changed to Mary Elizabeth Perry, by the county court of Cook county, Illinois; that Ruth E. Perry, the mother, died in 1922; that thereafter William E. Myers of Zionsville, Indiana, was appointed guardian of said child; that said child was in the care and custody of said William E. Myers as guardian at his home in Zionsville; that the adoptive father of said child lived in Grant county, Indiana, and had given his written consent that the said child be adopted by the petitioner. The verified consent of Earl C. Perry to said adoption by the petitioner was also filed with the clerk.

The court, on March 1, 1924, entered an order of adoption in accordance with the petition, and ordered that the petitioner from that time have the care and custody of said child. Two weeks later, and within the term at which the order of adoption was made and entered William E. Myers filed a verified application asking leave to appear as *amicus curiae*, for the purpose of presenting to the court certain facts about which he believed the court should be more fully informed, and which he believed would lead the court to vacate the order of adoption. In his application, Myers stated he was an uncle of said child and its duly appointed guardian acting under appointment of the Probate court of Marion county, that she had been an inmate in his home for three years, during which time he had cared for and schooled her at his own expense; that he was able financially and morally fit to have her care and custody; that there was an agreement between him and the relatives of said child that if at any time there should be any action to change her residence or control, he should be notified, and that no such change should be had without his consent; that he had no notice or knowledge of said adoption proceeding until said petitioner appeared at his home with the order of adoption and demanded the

immediate possession of such child; that the petitioner had no permanent home other than a boarding house; that she did not intend to keep said child permanently and make a home for her, but that it had been and was her intention to place such child in a home in Chicago, Illinois, among strangers to the court, and about whom the court knew nothing; the adoptive father, Earl C. Perry, was a *bona fide* resident of Grant county, Indiana; that the consent of said adoption was procured from said Earl C. Perry by purchase and payment of money and that had the facts including the want of jurisdiction of said minor been called to the attention of the court and the facts concerning the best interest of said child been given the court, said adoption would not have been granted.

On order of court, notice was given the petitioner, May H. Suter, of the filing of such application by Myers, and that the court would hear such application April 7, 1924, that being the first day of the next regular term of the court. On April 7, May H. Suter, appeared and filed a motion to strike the application of Myers from file. On April 19, this motion was overruled, and Myers was then for the first time given leave to appear as *amicus curiae*, and the petitioner, refusing to introduce any further evidence, the court, after considering the facts alleged in the application of Myers and on a reconsideration of the evidence theretofore introduced, found the facts set forth in the application of Myers to be true, and the order of adoption entered at the preceding term of court was vacated, the custody of the child restored to the guardian, and the petition for adoption dismissed.

From the action of the court in vacating and setting aside the order of adoption and dismissing her petition, May H. Suter, appeals and insists: (1) That the court erred in overruling her motion to strike out the applica-

tion of Myers to be allowed to appear as *amicus curiae* and in allowing him to appear as such; and (2) that the court erred in setting aside the order of adoption, and in dismissing her petition.

In discussing the questions involved, it will be well to keep in mind that an *amicus curiae* is one who, as a stander-by, when a judge is in doubt or mistaken in a matter of law, may inform the court. He is heard only by leave, and for the assistance of the court, upon a case then before it. He is not a party to the suit and has no control over it. *Birmingham Loan & Auction Co.* v. *First National Bank* (1893), 100 Ala. 249, 13 So. 945, 46 Am. St. 45. Courts undoubtedly have the right to allow an attorney, or other person, to appear as a friend of the court in a case, to act as an adviser of the court, and to make suggestions as to matters appearing upon the record, or in matters of practice. An *amicus curiae* has no rights in the matter. He can file no pleadings, or motions of any kind. He can reserve no exception to any ruling of the court and, of course, cannot prosecute an appeal. It has been held in this state that an *amicus curiae* may, on leave, file briefs, argue the case, and introduce evidence. *Parker* v. *State, ex rel.* (1892), 133 Ind. 178, 18 L. R. A. 567; *Irwin* v. *Armuth* (1891), 129 Ind. 340. See, also, *Hamlin* v. *Meeting House* (1907), 103 Me. 343, 69 Atl. 315. But since the *amicus curiae* can do nothing other than advise the court, no party to the action has any cause to complain if the court grants a stranger the privilege of being heard, since no action of such party can affect the legal rights of a party to the action. This being true, there was no reversible error in the action of the court in overruling the motion to strike out the petition of Myers for leave to appear as *amicus curiae,* or in permitting him to be heard.

In support of the second contention, appellant, con-

ceding that courts have control over their judgments and decrees during the terms at which they are rendered, insists that the court had no power or control over the order of adoption at the term following the one at which it was made, for the reason that the adoption proceeding was no longer before the court.

Myers was not a party to the adoption proceeding. He could not become a party thereto or be given any right to appear and object to the adoption. He was a stranger to the record. *Leonard* v. *Honisfager* (1909), 43 Ind. App. 607, 88 N. E. 91. The filing of the application after judgment, by a stranger to the record, asking leave to be heard as a mere friend of the court, did not keep the cause in court so as to give the court any power over the judgment at a subsequent term. Proceedings for adoption are judicial in character, and an order of adoption is no more sacred than is the decree in any other proceeding in court. Such an order and the power of the court over it are governed by the same rules of law as are all other judgments and decrees. The court, without doubt, had the power and authority to vacate and set aside the decree of adoption at the term when it was made, and if, after the filing of the application by Myers for leave to appear as a friend of the court, the trial judge thought there was a probability that he had erred in the matter, he should have acted before the end of the term, and have vacated and set aside the order of adoption and continued the matter, if need be, until the next term of court. It would be a dangerous and far reaching precedent if we were to hold that the mere filing of an application after judgment by a stranger to an action, asking leave to appear as a friend of the court, was sufficient to give the court authority to vacate the judgment at a subsequent term. For a discussion of the power of the court to change a final judgment, see

*McClellan* v. *Binkley* (1881), 78 Ind. 503; *Cairo, etc., R. Co.* v. *Holbrook* (1874), 72 Ill. 419; *Simmons* v. *Dowd* (1877), 77 N. C. 155; *Cook* v. *Moore* (1888), 100 N. C. 294, 6 S. E. 795, 6 Am. St. 587; *Ward* v. *Lee* (1808), 4 Ky. (1 Bibbs) 18; *Aetna Life Ins. Co.* v. *McCormick* (1866), 20 Wis. 279; *Bank of United States* v. *Moss* (1848), 47 U. S. 30, 12 L. Ed. 331.

It was one of the earliest doctrines of the common law, that the record of a judgment might be changed at any time during the term at which it was rendered. The Boone Circuit Court had that power. It had the power to change, amend or vacate the order of adoption at any time during the term in which it was made. Its power, however, terminated with the close of the term, unless the proceeding for adoption was kept alive by reason of Myers having filed a petition for leave to appear as a friend of the court. It has been held that a motion for leave to file a motion for a new trial does not keep a cause in court after the close of the term at which the judgment was rendered    *Odell* v. *Sargent* (1864), 3 Kans. 80. And we hold the application of Myers for leave to appear as *amicus curiae* did not give the court power to vacate the order of adoption after the close of the term. Such an application cannot be compared to a motion for a new trial or a motion to modify a judgment, and cases holding that such motion keeps the action *in fieri*, are not in point.

Myers, although not a party to this appeal, has filed a brief, and contends that the decree of adoption was void for want of jurisdiction, the contention being based upon the theory that the child's residence was in Grant county with her adoptive father.

The present statute of this state in relation to the adoption of children went into force August 17, 1855; Acts 1855 p. 122. The right of adoption, as conferred

by this statute, was unknown to the common law. It was taken from the Roman law. Under §1 of the act of this state (§913 Burns 1926, §868 Burns 1914) for the adoption of children, the first step to be taken by a person seeking the adoption of a child is the filing of a petition in the circuit court of the county where the child resides. Section 2 of the act (§914 Burns 1926, §869 Burns 1914) requires that the petition shall specify: (1) The name of the petitioner; (2) the name of the child; its age; whether it has any property, and, if so, how much; and (3) whether such child has either father or mother living, and, if so, where they reside. Such petition must be verified by the oath or affirmation of the petitioner.

It has been held that the petition required is jurisdictional in its character, and that the facts required by the statute to give the court jurisdiction must appear upon the fact of the petition. *Watts* v. *Dull* (1900), 184 Ill. 86, 56 N. E. 303, 75 Am. St. 141; *Kennedy* v. *Borah* (1907), 226 Ill. 243, 80 N. E. 767. But it is not necessary for us to decide what would be the effect of omitting one of the statutory requirements from the petition, and we express no opinion on that question. The petition in this case contains all the facts required by the statute. The fact that the child resides in the county where the petition is filed is not one of the facts which the statute expressly requires be stated in the petition. The petition in the instant case, however, did allege that the child whose adoption was sought was in the care and custody of Myers as its guardian, then residing in the county where the petition was filed. And we hold the petition was sufficient in form to give the court jurisdiction of the proceeding for adoption of the child therein named. As heretofore stated, the petition for adoption alleged that after

the death of the child's mother, Myers was appointed its guardian; that he had qualified and was acting as such, and that the child was then "in the care and custody of said Myers as such guardian at his home in the town of Zionsville, Indiana." We judicially know Zionsville is in Boone county. And it is presumed that the petitioner, at the time of the hearing of her petition for adoption, introduced evidence sufficient to justify the court in finding that the residence of the guardian was the residence of the child. *Shirley* v. *Grove* (1912), 51 Ind. App. 17. The court appointing the guardian may have found that, under the circumstances, the adoptive father was not a suitable person to have the custody of the child, and may have made an order to that effect and given the custody and tuition of the child to her guardian. If such an order was made, the court would have been justified in finding that the residence of the child was in Boone county and that it had jurisdiction to make the order of adoption. There is nothing in the record before us to warrant us in holding that the order was void, and on this record, we hold the decree of adoption is valid, and entitled to be treated the same as any other valid judgment or decree of the circuit court. In so holding, we are assuming that the probate court of Marion county had jurisdiction to make the appointment of the guardian, that it gave the custody of the child to the guardian and had jurisdiction so to do.

Suppose this had been an action for divorce or an action to annul a marriage, and that a decree of divorce had been granted, or a decree annulling the marriage had been entered, and without any party to the action taking any step thereafter, a stranger to the record had appeared in court on the last day of the term and filed an application asking leave to be heard as a friend of the court. And suppose that, at a subsequent term of

court, even after notice to the parties to the action, the court had vacated and set aside the decree of divorce or the annulment of the marriage over the objection of the parties and the parties or either of them thereafter died leaving a valuable estate and heirs, and the question of heirship was involved, would it be claimed the action of the court vacating the decree was valid?

Suppose in the instant case, the petition for adoption had been filed by Myers, that a decree of adoption had been entered, and that, within the term, one of Myers' sons had filed an application asking leave to appear as a friend of the court and to show reasons why the adoption should not have been made; that the hearing of such petition had not been acted on until the next term of court, at which time, the court, after hearing such application, had made an order purporting to vacate and set aside the order of adoption, and, on the next day, Myers had died leaving a valuable estate, and the question before the court was the right of the adopted child as an heir of Myers, would any one with any knowledge of law register a protest or dissent if we were to hold the action of the court in vacating the decree of adoption void and that the adopted child was entitled to share in the distribution of the estate? We think not.

The record in this case discloses that a court of competent jurisdiction appointed a guardian for the child in question, and, as we understand the record, gave the custody and care of the child to the guardian. And, in so far as the courts of this state are concerned, we apprehend that, as between the former adopting parent, Perry, and the guardian, the order of the court giving the care and custody of the child to the guardian is controlling. The fact that the action of the court in vacating and setting aside the order of adoption is held void, and the decree of

adoption theretofore reinstated, does not necessarily mean that the care and custody of the child must be taken away from the present guardian. As between Perry and appellant, the latter would be entitled to the care and custody of the child. But, as between appellant and the guardian, it seems to us that the order of the Boone Circuit Court, in so far as it attempts to take the care and custody of the child away from the guardian, is not such an order as would be binding in a proceeding by way of *habeas corpus* for the custody of the child. If Myers should refuse to give the custody of the child to appellant and the latter insists on having the care and custody of the child, it may be necessary for her to file her petition with the court which appointed the guardian and have that court modify the order giving the care and custody of the child to the guardian. Or probably, she may proceed in the circuit court of the county in which the child is detained without first making application to the probate court. These questions, however, are not now before us, and we express no opinion on them. The court having jurisdiction of such proceeding, in determining whether the guardian or the adopting parent should have the custody of the child, would be guided by that which would be for the best interest and welfare of the child. See *McDonald* v. *Short, Supt.* (1921), 190 Ind. 338, 343.

The allegation in the petition for adoption that the child was in the care and custody of Myers, "as her guardian" and that he resided in Boone county, was sufficient to give the court jurisdiction of the child.

17.

We are not advised as to where the adoptive father of the child resided at the time the guardian was appointed. The petition for adoption alleges that he "lived" in Grant county, and the application of Myers stated that he "moved" to Grant county

18.

about 1923. There is no claim that the probate court of Marion county did not have jurisdiction to appoint a guardian for the child, and we will, therefore, assume that the adoptive father and the child resided in Marion county at that time, and that that court not only had jurisdiction to appoint a guardian but that it also had jurisdiction to and did give the custody of the child to the guardian. If the custody of the child was by the court legally transferred from the adoptive father to the guardian, the residence of the guardian became the residence of the child, and when the guardian became a resident of Boone county, the child also became a resident of that county. *Townsend* v. *Kendall* (1860), 4 Minn. 412, 77 Am. Dec. 534; *Wilkins' Guardian* (1891), 146 Pa. St. 585, 23 Atl. 325.

In holding, as we do, that the order of adoption is valid and that the court had no jurisdiction to set it aside at the subsequent term of court, we are not to be understood as holding that the provision concerning the care and custody of the child is binding on the guardian, or that it gave appellant any right she would not have had if that provision had not been inserted in the order of adoption. Neither the appellant nor Myers has an absolute right to the custody of the child. It is a matter for the proper court to decide if either shall have that custody.

The judgment of the court vacating and setting aside the order of adoption and dismissing appellant's petition for adoption is reversed, with directions to reinstate the order of adoption.

Nichols, P. J., dissents.

## DISSENTING OPINION.

NICHOLS, J. (dissenting)—I concur in so much of the opinion of the majority in this case as seems to hold that the custody of the little girl involved is with

the guardian regardless of the proceedings for her adoption by appellant, but it appears by the record that both the appellant and the guardian have misapprehended their rights and the rights of the little girl in this regard, and such rights should be made plain to them.

As at the time of the appointment of the guardian, her father and mother had died and her adoptive father had no more interest in her welfare than to be willing thereafter to surrender his relation as such adoptive father for compensation, and as it appears by the record that the little girl had lived in the home of the guardian since his appointment as such, I assume that when he was appointed as such guardian such appointment was of both the person and the estate of his ward.

Section 3388 Burns 1926, §3065 Burns 1914, in force since May 6, 1853, expressly provides that: "Every guardian so appointed shall have the custody and tuition of such minor and the management of such minor's estate during minority, unless sooner removed or discharged from such trust: *provided,* that the father of such minor (or if there be no father the mother, if suitable persons respectively) shall have the custody of the person and the control of the education of such minor." It is clear by this statute and under the circumstances of this case, there being no father or mother and only an adoptive father who has shown himself apparently without interest in the welfare of the child, the guardian ever after his appointment and at the time of the filing of the application for the adoption of the child was entitled to its custody as against any other person until, of course, it is made to appear that he is unfit to be entrusted with her custody. This has been the holding of the courts of this state from the earliest days of its jurisprudence. *Bounell* v. *Berryhill* (1851),

2 Ind. 613; *John* v. *Emmert* (1878), 62 Ind. 533; *Grimes* v. *Butsch* (1895), 142 Ind. 113, 41 N. E. 328; *Palin* v. *Voliva* (1902), 158 Ind. 380, 63 N. E. 760; and this is a right which the guardian can enforce by *habeas corpus*. *Bounell* v. *Berryhill, supra*.

Certainly it should be the law as against one who has surreptitiously come into court and by *ex parte* adoptive proceeding, and, in the absence of the guardian who was charged with the custody of the child, sought to deprive him thereof.

I assert that the welfare of the child should be the first consideration of the courts; *Leonard* v. *Honisfager* (1909), 43 Ind. App. 607, 83 N. E. 91; and I contend that the court upon receiving information of the mistake that he had made, and of the fraud that had been perpetrated upon him, if we are to accept as facts the averments of the petition of the *amicus curiae,* and such information having come to him upon the last day of his term, or so near the close thereof that he could not hear the matter at that term, was justified in his discretion, in, not at once making a final order vacating the adoption but instead thereof, assigning the matter for hearing at the first day of the succeeding term notifying appellant accordingly, and that by so acting he did not lose jurisdiction to vacate the order of adoption. Suppose, as it seems to have been understood by appellant at the time, that the adoption proceedings gave her the absolute right to the custody of the child as against the guardian, will it be contended that the welfare of the child must yield to the technicalities of the law, and because of the fact that the guardian did not discover the step that had been taken until the custody of his ward was demanded of him by appellant, and so near the close of the term that he could not call the court's attention to its error in time for a hearing within that term, must such a situation thereafter preclude

the court from correcting its error, and compel the guardian to surrender the custody of his ward? Truly, as Judge Kavanaugh says in his lecture before the St. Louis Bar Association, published in the April, 1925, number of the American Bar Association Journal: "The iron bands of reasonless precedents bind our higher courts and through them the trial tribunals." I commend the lecture to the careful thoughtful perusal of the bench and bar. While it was delivered specially with reference to criminal practice and procedure its reasoning applies with equal force to civil practice and procedure.

Nothing appears as to the character of the petitioner, let us hope that she is unblemished in this regard, and that she is prompted only by the highest regard for the little girl, but, so conceding, if she can by an *ex parte* adoption proceeding in which she asks also for the custody of the child accomplish her end as in this case, then any other stranger, though vile in character and wholly unfitted to be entrusted with the care of the child, can by deception accomplish the same end, and the court, not having discovered his error within the term is helpless, and the child is sacrificed to the technicalities of law.

I must be heard emphatically and affirmatively to oppose such a possible situation. Quoting again from the above mentioned lecture: "It is of first importance to realize * * * that statutes concerning practice and procedure generally prove as elastic as the courts will make them."

But if there is no rule of law that makes paramount the welfare of the child, then equity should come to the rescue, and I can think of no case that should appeal more to the chancery powers of the court. One of the well-established maxims of equity is that: "Equity will not suffer a wrong to be without a remedy," and it has

been said that: "A court of equity need not search for precedents, nor worry about the technical rules of law." *Merrihew* v. *Parrott* (1915), 154 N. Y. Supp. 747, 168 App. Div. 704; and: "That justice may prevail, a court of equity will devise a remedy to meet every new emergency." *Tarnow* v. *Carmichael* (1908), 82 Nebr. 1, 116 N. W. 1031.

However, it is my opinion that in this case we do not need to resort to equity, and that the law can be reasonably construed so as to protect the child, and that it should be so done. It has been many times decided by this court, the Supreme Court, and by the courts of other states that a motion to vacate a judgment made at the term at which the judgment was rendered keeps the proceedings *in fieri* so that the motion may be ruled on at a subsequent term of court. *Wabash R. Co.* v. *City of Gary* (1921), 191 Ind. 394, 132 N. E. 737; *Vesey* v. *Day* (1910), 175 Ind. 406, 411, 94 N. E. 481; *Sauer, Admx.,* v. *Sauer* (1921), 77 Ind. App. 22, 133 N. E. 169; *State, ex rel.,* v. *McPike* (1922), 243 S. W. (Mo. App.) 278; *Stark Bros.* v. *Glaser* (1907), 19 Okla. 502, 91 Pac. 1040; *Donaldson* v. *Copeland* (1902), 101 Ill. App. 252; *Id.* (1903), 201 Ill. 540, 66 N. E. 844.

It is true that no motion was filed in this case by any one a party to the proceeding, none could be filed by any one other than the petitioner herself, for the proceeding was wholly *ex parte*. But one who, we may reasonably assume had a deep interest in the welfare of the little girl, her mother's brother, and her guardian, came to the court in the role of an *amicus curiae* with information which moved the court, and the court, on its own motion, with commendable discretion, waiting until it was further informed, set the matter for hearing at the earliest date to which a proper notice could be given, and caused the petitioner to be notified accordingly. As it seems to me, this was sufficient to keep the pro-

ceeding *in fieri*; certainly it should do so when it conduces to the welfare of a little girl. Our courts having held that the guardian of a child is not a proper party in proceedings such as here, we are certainly much in need of some legislation in this regard.