HANNIBAL E. HAMLIN,

Attorney General, by Information,

*vs.*

"PERTICULER BAPTIST MEETING HOUSE," et als.

Cumberland.    Opinion December 20, 1907.

*Deed.  Construction.  Estate.  Fee.  Amicus Curiae.  Appeal.  Statute (Mass.)
1811, chapter 6, section 3.  R. S., chapter 16, section 33.*

.True Lovett of Bridgton, by deed dated April 12, 1814, in consideration of the sum of nineteen dollars paid by Samuel Andrews and Jedediah Kimball " a committ of the Society cald Perticuler Baptist in said Town of Bridgton, or their successors in that office for the time being," gave, granted, sold and conveyed " Unto the said Samuel and Jedediah " a certain tract of land in said town, " to have and to hold, the aforegranted premises to the said Samuel and Jedediah and to their successors in office to their use and behoof forever," the covenants being in the following terms : "And I do covenant with the said Samuel and Jedediah and their

successors in office, that I am lawfully seized in fee of the aforegranted premises; that I have good right to sell and convey the same to the said Samuel and Jedediah and to their successors; and that I will warrant and defend the same premises to the said Samuel and Jedediah, their assigns forever, against the lawful claims and demands of all persons."

*Held*: (1) That it was the intention of the grantor to convey the property to the grantees, not in their individual right, but as trustees for the Perticuler Baptist Society, the word "committ" meaning committee, and being equivalent to trustees, and the words " successors in office " providing for a continuance of the trust.

(2) That the deed contains no words of qualification or limitation, nothing to indicate that under any circumstances the estate is to determine. There is no mention of any restricted purpose for which the property is to be used. It is a conveyance to the committee named and to their successors in office, to their use and behoof forever, and a fee simple in trust was granted, although no words of limitation to heirs were used.

The term amicus curiae implies the friendly intervention of counsel to remind the court of some matter of law which might otherwise escape its notice and in regard to which it might go wrong. Such an intervention is granted not as a matter of right but of privilege and the privilege ends when the suggestion has been made.

An amicus curiae has no control over the suit, and has no right to bring the case from one court to another or from a single Justice to the Law Court by exceptions, appeal or writ of error.

In the case at bar, Addie E. Pingree, was not named as a party defendant in the bill and when, without title or interest, she voluntarily appeared to resist it, she could be regarded, at best, simply as amicus curiae, and in that capacity her privilege ended when through her counsel she called the attention of the court below to certain suggestions in matters of law. It is true that as claimant of title she had a right to be heard on that single question and the appeal was properly entertained for the purpose of settling that question, but as that has been settled adversely to her rights, there is no longer any party in the Law Court to be heard. As amicus curiae she has had her hearing in the lower court. All the points raised in the Law Court were raised before the chancellor and from his decision she cannot as amicus curiae, appeal.

In equity. On appeal by defendant Addie E. Pingree. Appeal dismissed. Decree below affirmed.

Bill in equity in the nature of an information brought in the Supreme Judicial Court, Cumberland County, by "Hannibal E. Hamlin, Attorney General, Farragut Post, No. 27 of Bridgton, Grand Army of the Republic, Department of Maine" against "The Property in Bridgton Maine, known as the 'Old Baptist Meeting

House,' or 'Perticuler Baptist Meeting House,' Julia Kimball of Boston, Mass., Almira H. Hall of Winnebago, Minn., and all persons interested therein." This bill was brought under the provisions of Revised Statutes, chapter 16, section 33, which provides as follows: "Where any property in the state, dedicated and ordained for pious uses, has no proper or legal custodian, so that it is becoming wasted and the utility thereof is lost, upon the application of any person, patriotic or religious society interested in having such property preserved and applied to the uses for which it was originally intended, or for some public or patriotic purpose, the attorney general shall file a bill in equity, in the nature of an information, against such property and all persons interested therein, praying for the appointment of trustees to care for such property and for the proper application and disposal thereof, and the court may order such notice as seems proper, and may appoint receivers or trustees therefor, and upon final decree, may order the care, custody, sale, application or disposal of such property as will best serve the purposes for which it was originally intended, or some public or patriotic purpose. The court may convey or transfer such property to any religious or patriotic body, to be held and applied for the purposes of such trust as the court may declare; and it shall have power to treat, care for and dispose of the same in furtherance of such pious, public or patriotic uses as may seem best suited to the case and situation."

At the proper time, Addie E. Pingree of Boston, Mass., who was not named as a party in the bill, but who claimed title to the property, appeared and filed an answer with a demurrer inserted therein. A hearing was first had on the bill, answer, demurrer and replication, and the demurrer was overruled pro forma. A hearing was then had on bill, answer and proofs after which the Justice hearing the cause made the following decree:

"It is hereby ordered, adjudged and decreed that the plaintiff's bill be sustained, and Henry A. Shorey, Samuel Knight and J. Louville Bennett of Bridgton, County of Cumberland, State of Maine, are hereby appointed Trustees to care for said property described in paragraph first of the bill.

"It is hereby further ordered, adjudged and decreed that said Trustees shall at once sell the meeting house, located on said land, and after said sale deliver a deed of trust of said property described in said paragraph first of this bill to Farragut Post No. 27, of Bridgton, Grand Army of the Republic; Department of Maine, its successors and assigns for the purpose of converting the same into a Memorial Square or Park upon which shall be reared a soldier's monument or other structure, to the memory of the sons of Bridgton who fought in behalf of the cause of National Unity in the War of the Rebellion."

From this decree the said Addie E. Pingree took an appeal to the Law Court.

The original deed of the "Old Baptist Meeting House Lot" as shown by a copy personally verified from record by the late Benj. C. Stone, Clerk of Courts, Cumberland County, is as follows:

"Know All Men By These Presents, That I True Lovett of Bridgeton, County of Cumberland and Commonwealth Massachusetts, Gentleman, in consideration of the sum of nineteen dollars, paid by Samuel Andrews Esqr and Jediah Kimball, both of the town, County and Commonwealth aforesaid, a committ of the society cald perticuler Baptist, in said town of Bridgeton, or their successors in that office for the time being, the receipt whereof I do hereby acknowledge, do hereby give, grant sell and convey unto the said Sam'l & Jedediah, a certain peace of land situated in said Bridgeton and being a part of the lot numbered seven in the twelveth Range of lots in said town, beginning on the range line by Abner Smith land at a stake and stones, thence North forty two degrees West nine rods and one ninth of a rod to a stake and stones, by said Smith's land, thence South sixty five degrees West, eleven rods and one half to a stake and stones by the side of the rode lately laid out, thence by the said road forty one degrees east of South, nine rods and one ninth of a rod to the range line, to a stake and stones, thence on said Range line, North sixty five degrees east twelve rods to the first bounds, containing one hundred square rods be the same more or less.

"To Have and to hold, the aforegranted premises to the said Samuel and Jedediah and to their successors in office to their use and behoof forever; and I do covenant with the said Sam'l and Jedediah and their successors in office, that I am lawfully seized in fee of the aforegranted premises : that I have good right to sell and convey the same to the said Saml & Jedediah and to their successors : and that I will warrant and defend the same premises to the said Sam'l and Jedediah, their assigns forever, against the lawful claims and demands of all persons.

"In Witness Whereof, I the said True Lovett have hereunto set my hand and seal this, the twelveth day of April in the year of our Lord one thousand eight hundred and fourteen.

"Signed, Sealed and delivered in
        presence of us
        "Jacob Ellsworth    Wm. Hazen        True Leavit        (Seal)"

"Cumberland ss April 12, 1814.    Then the above named True Leavit acknowledged the above instrument to be his free act and deed.

"Before Me,    Isaiah Ingalls, Justice of the Peace."

The case appears in the opinion.

*William H. Looney*, for plaintiff.

*Peabody & Peabody and Robert Treat Whitehouse*, for defendant, Addie E. Pingree.

SITTING : EMERY, C. J., PEABODY, SPEAR, CORNISH, KING, JJ.

CORNISH, J.    On April 12, 1814, True Lovett of Bridgton, in consideration of the sum of nineteen dollars paid by Samuel Andrews and Jedediah Kimball "a committ of the Society cald Perticuler Baptist in said Town of Bridgton, or their successors in that office for the time being," gave, granted, sold and conveyed "unto the said Samuel and Jedediah" a certain tract of land in said town, "to have and to hold, the aforegranted premises to the said Samuel and Jedediah and to their successors in office to their use and behoof forever," the covenants being in the following terms:    "And I do covenant with the said Samuel and Jedediah and their successors in

office, that I am lawfully seized in fee of the aforegranted premises; that I have good right to sell and convey the same to the said Samuel and Jedediah and to their successors; and that I will warrant and defend the same premises to the said Samuel and Jedediah, their assigns forever, against the lawful claims and demands of all persons."

It is admitted that on October 24, 1807, "the First Perticuler Baptist Church in Harrison and Bridgton" was organized with nine members, not as a corporation, but as a voluntary association for religious purposes. The word "Perticuler" in that connection is supposed to mean regular or straight, in the same sense as these adjectives are sometimes applied to one wing of a political party in distinction from those who have seceded from the regular organization. The membership increased in 1812 to thirty and in 1815 they erected a house of worship on the premises purchased the year before. In 1827, the Harrison members withdrew and formed a society of their own. The present building was erected in 1853 and up to 1870 regular services were maintained, but the society had begun to decline and the last church record bears date 1873. The pew owners leased the building to the Christian Denomination in 1873 and to the Free Will Baptist Society in 1880, by which society it was occupied for five or six years. The last survivor of the church was Rev. Jacob Bray, who combined in himself pastor, clerk and sole surviving member. He died in 1882. During the twenty years following 1885 the property was unoccupied and was becoming wasted. The original trustees had died, no successors had been appointed, the church for whose benefit it was purchased, had become extinct, and there was no one to care for the property.

Under these circumstances this bill in equity was filed on October 14, 1905, by the Attorney General on relation of Farragut Post, G. A. R. of Bridgton, in accordance with the provisions of Revised Statutes, chapter 16, section 33, praying for the appointment of trustees and the conveyance of said property by the trustees, so appointed, to said Grand Army Post in trust, for the purpose of converting said property into a Memorial Square or Park upon which a soldier's monument could be erected.

Notice was duly ordered by publication but no one appeared to object to the proceedings except Addie E. Pingree who claimed title to the property by deed of April 16, 1888, from Naomi Trumbull the daughter and sole heir at law of True Lovett, the original grantor who died in 1865. The pew owners made no objection and so far as known favored the proposed disposition of the property. The Justice before whom the case was heard after full hearing and argument, sustained the bill, and appointed trustees with power to make the conveyance prayed for, and from this decree said Addie E. Pingree appealed.

The first question involved is the title of Addie E. Pingree, who by demurrer and answer resists these proceedings, and that involves the construction of the original deed of April 12, 1814. She claims that this deed conveyed not a fee simple, but a qualified, base or determinable fee and that when the Perticuler Baptist Society ceased to exist and the property ceased to be used for religious purposes, the title reverted to the original grantor True Lovett, or to his heir at law, from whom she claims.

Such is not our construction of this deed.

"A base or qualified fee is such a one as hath a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. . . . . This estate is a fee; because by possibility it may endure forever in a man and his heirs; yet as that duration depends upon the concurrence of collateral circumstances which qualify and debase the purity of the donation, it is therefore a qualified or base fee." 2 Black Com. 109, and see 4 Kent Com. 5th Ed. 91.

This definition and its application to concrete grants are found in numerous cases, but in all, the qualification is "subjoined" and "annexed" to the grant. It must be, not a matter of strained inference, but of clearly expressed intention. The following are illustrations of such a determinable estate:

"As long as the Church of St. Paul shall stand," Walsingham's Case, 2 Plowd. 557, "As long as used for said canal," *State* v. *Brown*, 27 N. J. L. 1, "So long as the same shall be used and employed for the uses and purposes of the Ohio and Mississippi

R. R. even forever," *Wiggins Ferry Co.* v. *R. R. Co.*, 94 Ill. 83. "So long as said corporation shall keep pipes in his land and no longer," *Jamaica Pond Acq. Co.* v. *Chandler*, 9 Allen, 159. "So long as said real estate shall by said society or its assigns be devoted to the uses, interests and support of certain religious doctrines," *First Universalist Society* v. *Boland*, 155 Mass. 171. "As long as said Trafton occupies said privilege with mills," *Moulton* v. *Trafton*, 64 Maine, 218.

These decisions are in harmony with the quaint maxim found in Shep. Touchstone, 126, "To every good condition is required an external form," and also with the elementary principle that conditions are not viewed with favor by the law. In *Rawson* v. *Inhs. of School District*, 7 Allen, 125, a grant of land to a town "for a burying place forever" was held not to be a grant upon a condition subsequent. See also *Packard* v. *Ames*, 16 Gray, 327.

In the case at bar there are no words of qualification or limitation, nothing to indicate that under any circumstances the estate is to determine. There is no mention of any restricted purpose for which the property is to be used. It is a conveyance to the committee named and to their successors in office, to their use and behoof forever, and a fee simple in trust was granted, although no words of limitation to heirs were used. *Packard* v. *Old Colony R. R. Co.*, 168 Mass. 92; *Craig* v. *Inhs. of Franklin Co.*, 58 Maine, 479.

It was plainly the intention of the grantor to convey the property to the grantees, not in their individual right, but as trustees for the Perticuler Baptist Society, the word "committ" meaning committee, and being equivalent to trustees, *Sawyer* v. *Skowhegan*, 57 Maine, 500, and the words "successors in office" providing for a continuance of the trust. No particular words are required to create a trust. It is a matter of intention gathered from the whole instrument and here that intention is clear. All the necessary elements exist, the trustees, the beneficiary and the property to be held. The trustees had no duty to perform, they were clothed with no power, it was a naked trust. It is true that the beneficiary was not an incorporated society or a parish organization, but three years

before this deed was given, the Commonwealth of Massachusetts by Statute of 1811, chapter 6, section 3, provided that an unincorporated religious society could acquire, use and enjoy property in the same manner as if incorporated, and could elect suitable trustees, agents or officers in connection therewith. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196. True Lovett therefore, conveyed an absolute fee simple in trust, the legal title vesting in the committee named and their successors in office, and the equitable title or beneficial interest in the unincorporated religious society known as the Perticuler Baptist. He intended to and did part with all title to the premises, without any right of reversion whatever, and therefore Addie E. Pingree has no title as grantee from the heir of True Lovett because her grantor had none.

But said Addie E. Pingree also sets up a claim of title by adverse possession through herself and said Naomi Trumbull from whom she obtained a deed on April 16, 1888. Without reviewing the testimony it is sufficient to say that the evidence falls far short of sustaining such a contention. Occasional acts, which savored more of trespass than of ownership, were proved but they negatived that uninterrupted and continuous, as well as open and adverse possession which the law requires.

Upon both points the claims of Addie E. Pingree fail and in our opinion she had no title or interest in this property, nothing which would warrant her appearance and defense. She was a mere stranger.

This being so, this appeal must be dismissed without further consideration by this court of any of the points raised in the court below by said Addie E. Pingree in her demurrer and answer either as to the constitutionality or construction of the statute in question. She was not named as a party defendant in the bill and when, without title or interest, she voluntarily appeared to resist it, she could be regarded, at best, simply as amicus curiae, and in that capacity her privilege ended when through her counsel she called the attention of the court below to certain suggestions in matters of law.

The term amicus curiae implies the friendly intervention of counsel to remind the court of some matter of law which might otherwise escape its notice and in regard to which it might go wrong. Such an intervention is granted not as a matter of right, but of privilege and the privilege ends when the suggestion has been made. He has served his purpose and has no further standing in court. It is not the function of an amicus curiae to take upon himself the management of the cause. *Taft* v. *Transportation*, 56 N. H. 414. A demurrer cannot be filed by him, ex parte Henderson, 89 Ala. 36, nor exceptions, *Birmingham L. & A. Co.* v. *First Nat. Bank*, 100 Ala. 249, 46 Am. St. Rep. 45; nor a motion to dismiss, *Piggott* v. *Kirkpatrick*, 31 Ind. 261.

"An amicus curiae is heard only by the leave and for the assistance of the court and upon a case already before it. He has no control over the suit and no right to institute any proceeding therein, or to bring the case from one court to another or from a single judge to the full court by exceptions, appeal or writ of error." *Martin* v. *Tapley*, 119, Mass. 116; In re Columbia R. R. Co. 101 Fed. Rep. 965. It is true that Addie E. Pingree, as claimant of title, had a right to be heard in this court on that single question and the appeal is properly entertained for the purpose of settling that question, but as that has been settled adversely to her rights, there is no longer any party in this appellate court to be heard. As amicus curiae she has had her hearing in the lower court. All the points raised here were raised before the chancellor and from his decision she cannot as amicus curiae, appeal. The decision of the court below stands, and the entry must be,

*Appeal dismissed.*

*Decree below affirmed,*