In re Philip INGENERI, Debtor.

Richard Parks Anderson, Plaintiff

v.

Philip Ingeneri, Defendant.

Bankruptcy No. 03–10120.
Adversary No. 03–1075.

United States Bankruptcy Court,
D. Maine.

March 15, 2005.

Philip L. Ingeneri, Bangor, ME, pro se.

Jon A. Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for plaintiff.

### MEMORANDUM OF DECISION

LOUIS H. KORNREICH, Bankruptcy Judge.

Anderson's claim of exception to discharge against Ingeneri, his former attorney, "for fraud or defalcation while acting in a fiduciary capacity" under 11 U.S.C. § 523(a)(4),[1] is premised upon two things: First, that his attorney-client relationship with Ingeneri established the requisite fiduciary capacity for both fraud and defalcation under § 523(a)(4); and, second, that both fraud and defalcation were established by a state court default judgment against Ingeneri under the doctrine of *res judicata* or, if not, by the facts in the stipulated record in this action. Anderson has failed to meet his burden in both respects and, for the reasons set forth below, judgment will enter for Ingeneri.

### JURISDICTION

This is a core proceeding and this court will enter final judgment pursuant to 28 U.S.C. § 157(b)(2)(I) and § 1334(b).

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et seq.*

## FACTS

The facts are not in dispute. Anderson owns a furniture store. He engaged a contractor named Wilbur to renovate his store under a fixed-price contract. There was a dispute and Wilbur filed a civil complaint against Anderson in state court. Anderson retained Ingeneri to represent him in that litigation. Ingeneri filed an answer, counterclaim, and motion to dismiss the Wilbur complaint. Ingeneri received discovery requests from Wilbur's attorney and forwarded them to Anderson. Anderson sent Ingeneri some responses to those requests in the fall of 2000 and then left the country for several weeks. At that point Ingeneri requested a discovery extension and then did little else. Upon his return Anderson tried at least a dozen times over several months to get an update from Ingeneri. He received no response. During this period Ingeneri failed to comply with the rules of discovery. Orders to compel discovery were entered. Eventually, and without Anderson's knowledge, Wilbur received judgment in the amount of $65,015.36. Anderson first learned of this adverse outcome when he received service of a disclosure subpoena. Thereafter, Ingeneri apologized for his misconduct, admitted that the default judgment was his fault, and said that he "would not walk away" from it.

Anderson paid $50,000 to settle with Wilbur and then sued Ingeneri in state court for professional negligence and fraud. Among other things Anderson's complaint alleged that Ingeneri had been hired to defend him and bring a counterclaim against Wilbur; that Ingeneri had failed to respond to discovery requests and had allowed a default judgment to be entered; that Ingeneri had led Anderson to believe he had diligently pursued Anderson's interests in the Wilbur action; that Ingeneri's representations were false; and that he, Anderson, had reasonably re-

lied on them to his detriment. Anderson received judgment by default without hearing in the amount of $50,000.

Ingeneri filed a petition for relief under Chapter 7 and Anderson commenced this action for exception to discharge.

## DISCUSSION

■ Anderson's first premise, that his attorney-client relationship with Ingeneri was imbued with the "fiduciary capacity" required for an exception to discharge under § 532(a)(4), would be correct if Anderson had entrusted funds or other property to Ingeneri. A misappropriation or unexplained disappearance of client funds or property entrusted to an attorney may be deemed to be "fraud or defalcation while acting in a fiduciary capacity." *See, e.g., Andy Warhol Foundation v. Hayes (In re Hayes),* 183 F.3d 162, 168 (2nd Cir.1999)(defalcation found to apply to wrongful overcharges for legal services by counsel to an estate); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 473 (Bankr. D.N.H.1993)(the fiduciary capacity exception applied to a debt for a retainer owed by a lawyer for work he failed to perform). The missing element in this case is the entrustment of property.

■ When client property is entrusted to an attorney the attorney-client relationship, which would otherwise be a fiduciary relationship based upon special knowledge, skills, and expectations, becomes, in addition to that, a technical trust relationship. With the entrustment of property an attorney automatically takes on the duties (i.e., "fiduciary capacity") of a trustee. These trust duties are in addition to the ordinary fiduciary duties attendant upon a purely service based (e.g., litigation) attorney-client relationship. It is the entrustment of property which superimposes a technical trust upon the attorney-

client relationship and it is the existence of a technical trust which places the lawyer in a fiduciary capacity. Consequently, the exception to discharge under § 523(a)(4) "for fraud or defalcation while acting in a fiduciary capacity" will not apply to a lawyer unless he or she has been entrusted with funds or property. *See Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996). When, as here, the underlying debt is a judgment for professional negligence or fraudulent misrepresentation with respect to legal services like litigation, the § 523(a)(4) exception will not apply. *See Hayes*, 183 F.3d at 170, fn. 4.

▮ The linkage of "fiduciary capacity" to the existence of a technical or an express trust is not found in the Code or in the legislative history; however, it is a venerable connection of judicial origin with roots that reach at least as far back as the Act of 1841. *See, e.g., Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)(citing *Chapman v. Forsyth*, 2 How. 202, 11 L.Ed. 236 (1844)); *American Agricultural Chemical Company v. Berry*, 110 Me. 528, 530, 87 A. 218 (1913). It is well established that the fiduciary capacity contemplated in the exception to discharge "is found only in circumstances constituting a technical or express trust." *See, e.g., LaPointe v. Brown (In re Brown)*, 131 B.R. 900, 904 (Bankr.D.Me. 1991). Although fiduciary capacity in the context of § 523(a)(4) is federal concept, its application to a given circumstance will necessarily be informed by state law principles, "particularly those that define essential attributes of a trust relationship." *Id.* (internal citations omitted)(discussing fiduciary capacity in relation to fiduciary duties of a corporate officer); *Berres v. Bruning (In re Bruning)*, 143 B.R. 253, 255 (D.Colo.1992)(discussing the fiduciary

relationship between a corporate director and a corporation's creditors).

▮ The attributes of an express trust include an explicit declaration of intention to create a trust, a trustee, a beneficiary, and trust property. *See Hamlin v. Perticuler Baptist Meeting House*, 103 Me. 343, 69 A. 315, 318 (1907). The defining quality of a trust is the subordination of self interest by the trustee. *See In re Estate of Stowell*, 595 A.2d 1022,1025 (Me. 1991). "A trust involves a duty of the fiduciary to deal with particular property for the benefit of another." 76 Am.Jur.2d Trusts § 1. A technical trust has all the attributes of an express trust, except, in lieu of an explicit declaration of intent, its origin is found in the fiduciary relationship of the parties and the surrounding circumstances. When there is a fiduciary duty to subordinate self-interest with respect to property for the benefit of another, a technical trust will exist. *See, e.g., Hayes*, 183 F.3d at 168 with respect to the attorney-client relationship and *Brown* 131 B.R. at 905 with respect to corporate officers.

▮ Not every written expression of trust is a declaration of trust. For example, the insertion of words of trust into an ordinary commercial contract will not make it a declaration of trust. "It is not enough that by the very act of wrong-doing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto." *Davis*, 293 U.S. at 333, 55 S.Ct. 151. Similarly, the fiduciary relationship and circumstances underlying a technical trust may not arise as a consequence of the creation of the debt. For this reason a "constructive trust" is a remedy to prevent unjust enrichment rather than a trust. *Corey v. Corey*, 803 A.2d 1014, 1016 (Me.2002). As

such it would not be a basis for fiduciary capacity under § 523(a)(4).

Without question, the attorney client-relationship between Anderson and Ingeneri was a fiduciary relationship, *see Sargent v. Buckley,* 697 A.2d 1272, 1275 (Me. 1997), with the attribute of subordination of self-interest. Had Anderson entrusted Ingeneri with property, all of the elements of a technical trust would have been present, including the subordination of self-interest with respect to such property. Any debt for fraud or defalcation with respect to such property could have been excepted from discharge under § 523(a)(4). But there is nothing in the record to suggest that the default judgment arose from anything other than negligence or fraudulent misrepresentations with respect to the litigation. No property was entrusted to Ingeneri. Thus, there was no technical trust and no fraud or defalcation with respect to property.

 Anderson's state court complaint, like his complaint in this action was based solely upon Ingeneri's professional negligence as trial counsel. As egregious as that misconduct may have been, it is not a proper basis for an exception to discharge under § 523(a)(4). Even if Ingeneri's representations were fraudulent and nondischargeable under § 523(a)(2) because of the overlapping tests for fraud in the First Circuit and Maine, *see,* respectively, *McCrory v. Spigel (In re Spigel),* 260 F.3d 27 (1st Cir.2001) and *Jourdain v. Dineen,* 527 A.2d 1304 (Me.1987), there would be no sustainable grounds for an exception to discharge for fraud under § 523(a)(4).[2] There is a strong policy favoring a fresh start and exceptions to discharge are to be narrowly construed, *see Rutanen v. Baylis (In re Baylis),* 313 F.3d 9, 17 (1st Cir.2002), and pled specifically. *See Spigel,* 260 F.3d at 32. Anderson's failure to plead the general fraud exception under § 523(a)(2) is fatal with respect to any misrepresentations which may have been made by Ingeneri in (or out of) the context of the Wilbur litigation. Fraudulent representations or omissions, even if made by an attorney in an attorney-client relationship, are beyond the scope of the § 523(a)(4) exception to discharge. For this reason, the doctrine of *res judicata,* which may have influenced a § 523(a)(2) determination, does not apply in this § 523(a)(4) action.[3]

### CONCLUSION

Anderson has failed to establish that Ingeneri engaged in fraud or defalcation while acting in a fiduciary capacity. A separate order will issue.

**2.** The elements of § 523(a)(2) fraud in the First Circuit are that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, (2) the debtor intended to deceive, (3) the debtor intended to induce the creditor to rely upon the false statement, (4) the creditor actually relied upon the misrepresentation, (5) the creditor's reliance was justifiable, and (6) the reliance upon the false statement caused damage. *Spigel,* 260 F.3d at 32. These are the same as the elements of common law fraud under Maine law. *See Dineen,* 527 A.2d at 1307. A non-disclosure may also be a mis-

representation. *See McCullough v. F.D.I.C.,* 987 F.2d 870, 873 (1st Cir.1993).

**3.** Res judicata requires: (1) that the issues raised in the second action must be the same as in the first action, (2) that the issues were actually litigated in the first action, (3) that the determinations in the first action be part of a binding and final judgment, and (4) that the determinations in the first action were essential to the judgment. *See McAlister v. Slosberg (In re Slosberg),* 225 B.R. 9, 14 (Bankr.D.Me.1998).