MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 6
Docket:      Pen-22-225
Argued:      October 4, 2023
Decided:     January 25, 2024

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

DALE F. THISTLE

JABAR, J.

[¶1] Dale Thistle appeals from a judgment of conviction of theft by misapplication of property (Class B), 17-A M.R.S. § 358(1)(A), (B)(1) (2023), entered by the trial court (Penobscot County, *Anderson, J.*) after a jury trial. Thistle argues that we must vacate his conviction because (1) the trial court erred by not granting his motion for acquittal when the evidence established a statute of limitations defense; (2) the trial court erred in its instructions to the jury on the Maine Rules of Professional Conduct; (3) the State committed prosecutorial error; and (4) the evidence was insufficient to convict him. We affirm Thistle's conviction.

## I.  BACKGROUND

[¶2]  "When [the evidence is] viewed in the light most favorable to the State, the jury could have rationally found the following facts."  *State v. Fay*, 2015 ME 160, ¶ 2, 130 A.3d 364.  Dale Thistle was an attorney in Newport.  As part of his practice, he drafted a will for Gilman Friend in 2008.  The will nominated Donna Friend, Gilman's ex-wife, as the estate's personal representative and devised a substantial portion of Gilman's estate to her.  The will devised the remainder of the estate to Gilman's four adult children.

[¶3]  In December 2010, Gilman fell at his home.  Emergency responders treated Gilman for cuts and abrasions and then left Gilman at home with Donna.  Donna found Gilman dead the next morning.  As personal representative of Gilman's estate, Donna hired Thistle to explore the possibility of a wrongful death suit against the emergency responders' employer.  Thistle ultimately negotiated a settlement on Donna's behalf, and on July 2, 2012, he received a check for $390,000 payable to "Donna Friend Personal Representative of the [Estate of] Gilman Friend and Dale F. Thistle Esq."  Thistle deposited the check into his IOLTA[1] (client trust) account on July 13, 2012.

---

[1] "IOLTA" stands for "interest on lawyer's trust account."  M.R. Prof. Conduct 1.15(b)(4).  A lawyer must deposit and keep in an IOLTA account "[a]ll funds of any client . . . that are small in amount or held for a short period of time."  *Id.*  Larger amounts of a client's funds that will be held for a longer time must be kept in a separate account or in a pooled account in which the interest earned on the

[¶4] On August 2, 2012, Thistle consulted an attorney about whether the proceeds of the wrongful death settlement should go to Donna or to Gilman's children.[2] The attorney advised that, under both the will and 18-A M.R.S. § 2-804 (2009), the funds were statutorily required to go to Gilman's children, but Donna was entitled to recover her expenses in pursuing the action on behalf of the estate. From the IOLTA account, Thistle then reimbursed Donna her expenses and paid the consulting attorney. Accounting for these expenses, and the approximately $96,300 Thistle was entitled to receive as an attorney fee for the wrongful death claim, approximately $290,000 remained of the settlement funds for Gilman's children.

[¶5] At the end of July 2012, Thistle's IOLTA account balance was $379,703.20. By the end of November 2012, the balance was $280,703.28. And by the end of January 2013, the account balance was $249,236.59. The balance

---

client's funds can be accounted for and credited to the client. M.R. Prof. Conduct 1.15(b)(3). Interest earned on IOLTA accounts is paid to the Maine Justice Foundation "to provide services that maintain and enhance resources available for access to justice in Maine," including "legal services, education, and assistance to low-income, elderly, or needy clients." M. Bar R. 6(e)(3).

[2] Thistle sought the attorney's opinion on whether Donna, because she had been living with Gilman as a married partner at the time of his death despite their prior divorce, should receive part or all of the settlement as Gilman's heir or whether the full settlement amount should pass to Gilman's children.

never increased after January 2013. As of March 2014, the account balance was only $21,958.62.

[¶6] Thistle made frequent withdrawals from the IOLTA account for personal expenses, such as tax delinquency payments, payments to his son and ex-wife, utility payments, home repair payments, and payments to himself. Between July 2013 and March 2014, Thistle withdrew over $300,000 from the IOLTA account, far more than the sum of Donna's expenses, expenses of the consulting attorney, and Thistle's attorney fees in the settlement action.

[¶7] In May 2014, a receiver appointed to close Thistle's practice liquidated and closed the IOLTA account. When the receiver was appointed, the account contained $15,445.92—not enough to pay Gilman's children their roughly $290,000 share of the settlement funds. Between Thistle's receipt of the settlement funds in July 2012 and the closure of his IOLTA account, Thistle never paid Donna or Gilman's children or notified the children that the settlement award existed. Gilman's children learned of the settlement award only after Donna's death in 2014. When they finally learned of the award, they contacted the Board of Overseers of the Bar.

[¶8]  On September 25, 2019, the State indicted Thistle for one count of theft by misapplication of property (Class B), 17-A M.R.S. § 358(1)(A), (B)(1).[3] When Thistle failed to appear in court on November 7, 2019, the court issued a warrant for his arrest.  Thistle, who was then living in Quebec, Canada, was taken into custody by Canadian authorities and extradited.  At his arraignment on November 22, 2019, the court asked Thistle's attorney how long Thistle had been in Canada, to which Thistle himself responded, "Two and a half years."

[¶9]  The court held a three-day jury trial on June 15-17, 2022.  The State presented evidence that Thistle was aware that Gilman's children were entitled to the settlement funds; that Donna did not wish to distribute the settlement to them despite that entitlement; that Thistle understood that professional and ethical rules prohibited him from using client funds to pay his personal expenses; and that Thistle made extensive withdrawals for personal expenses from his IOLTA account after depositing the settlement funds.  Thistle's attorney advanced two arguments in defense: first, that a head injury prevented

---

[3]  Title 17-A M.R.S. 4 358(1)(A) provides that a person is guilty of theft by misapplication of property if "[t]he person obtains property from anyone . . . upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by that person, whether from that property or its proceeds or from that person's own property to be reserved in an equivalent or agreed amount, if that person intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as that person's own."  Violation of section 358(1)(A) is a Class B crime if "[t]he value of the property is more than $10,000."  *Id.* § 358(1)(B)(1).

6

him from forming the requisite state of mind for theft by misapplication of property, and second, that the State failed to produce sufficient evidence to satisfy the elements of the crime charged because Thistle did not owe a known legal obligation to Gilman's children to distribute the settlement funds. On the second day of trial, Thistle moved for a judgment of acquittal, and the trial court denied the motion.

[¶10] In its closing argument, the State argued that Thistle's attorney had made "evidence-free assertions" regarding Donna's role in the crime, as there was no evidence that Donna had prevented Thistle from distributing the settlement funds to Gilman's children, and incorrectly characterized Thistle's closing argument as suggesting that Donna had been Thistle's accomplice to the theft.

[¶11] Following closing arguments, the trial court instructed the jury on Maine Rules of Professional Conduct 1.15(a), (d), and (e), which govern a lawyer's handling of client funds.[4] The court further instructed the jury on the State's burden of proof, Thistle's lack of burden, that closing arguments are not evidence, and that it was for the jury to determine what the evidence in the case

___

[4] Thistle objected to the court's instructions on Rules 1.15(a) and (e) but did not object to the instruction on Rule 1.15(d).

was and what it demonstrated. On June 17, 2022, the jury returned a verdict finding Thistle guilty of theft by misapplication of property. *See* 17-A M.R.S. § 358(1)(A), (B)(1). The court later sentenced Thistle to a term of imprisonment of six years, with all but two years suspended, followed by three years of probation. Thistle timely appealed. M.R. App. P. 2B(b).

## II. DISCUSSION

[¶12]  Thistle argues that the trial court erred by denying his motion for a judgment of acquittal because the evidence established a statute of limitations defense, the State committed prosecutorial error warranting vacatur, and the evidence was insufficient to convict him.[5]

### A.    Statute of Limitations

[¶13]  Thistle argues that the trial court erred when it denied his motion for a judgment of acquittal at the end of the State's case-in-chief because there was sufficient evidence in the record to generate a statute of limitations defense that the State did not disprove beyond a reasonable doubt. The State responds

---

[5]  Thistle additionally argues that the court erred by instructing the jury on Maine Rules of Professional Conduct 1.15(a), (d), and (e) because the instructions omitted relevant rule language, were not generated by the evidence, and welcomed a verdict based on impermissible criteria. Contrary to Thistle's contentions, the court committed neither prejudicial nor obvious error in instructing the jury on these rules. *See State v. Hanscom*, 2016 ME 184, ¶ 10, 152 A.3d 632; *State v. Lajoie*, 2017 ME 8, ¶ 13, 154 A.3d 132; *supra* n.2. We find Thistle's arguments unpersuasive and affirm the court's rulings on that issue without further discussion.

8

that Thistle waived that defense by raising it for the first time on appeal, having never explicitly asserted it at trial.

[¶14] Title 17-A M.R.S. § 8(1) (2023) provides that "[i]t is a defense that prosecution was commenced after the expiration of the applicable period of limitations." The limitations period to prosecute a Class B crime is six years. *Id*. § 8(2). The statutory period is tolled, however, if "the accused is absent from the State," and the tolled period does not extend the limitations period by more than five years. *Id.* § 8(3)(A).

[¶15] Although the State generally has the burden to disprove a statutory defense that is generated by the evidence, 17-A M.R.S. § 101(1) (2023); *State v. Lacourse*, 2017 ME 75, ¶ 11, 159 A.3d 847, we conclude that in the unique facts presented by this case, Thistle waived the statute of limitations defense he raises on appeal. The State filed the indictment on September 5, 2019, and alleged that Thistle committed the offense on July 13, 2012, seven years prior.[6] As discussed above, Thistle admitted—on the record—during pretrial proceedings that, prior to being extradited in 2019 when the State filed the indictment, he had been in Canada for two and a half years—a period sufficient

---

[6] July 13, 2012, is the earliest possible date that the offense was committed. The evidence would also support a finding that the offense did not in fact occur until some months later, when the account balance fell below the amount owed to Gilman's children.

to toll the limitations period such that it expired after the date of the indictment. 17-A M.R.S. § 8(3)(A).

[¶16]  Having admitted in front of the State and the trial judge to facts that tolled the limitations period, Thistle cannot now be heard to complain that the State failed to present sufficient evidence to prove beyond a reasonable doubt on this issue to the jury.  The conduct of the parties following his admission, including the State's decision not to present evidence of tolling and Thistle's decision not to renew his motion for a judgment of acquittal or request a jury instruction on the statute of limitations defense, demonstrates that the parties effectively treated this defense as waived.  Under these narrow circumstances, we deem the defense waived and affirm the trial court's denial of Thistle's motion for judgment of acquittal.

## B.    Improper Prosecutorial Argument

[¶17]  Thistle contends that the State erred during its rebuttal closing argument.  Thistle failed to object to the State's rebuttal argument, so we review only for obvious error.  *State v. Penley*, 2023 ME 7, ¶ 22, 288 A.3d 1183.  We must first determine whether the conduct was error, and, if it was, we must determine whether to vacate the conviction, considering the State's comments both as a whole and individually.  *Id.* ¶ 23.  We will affirm the judgment if "it is

highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments." *Id.* (quotation marks omitted). When reviewing claims of prosecutorial error in argument, if "a prosecutor's statement is not sufficient to draw an objection, particularly when viewed in the overall context of the trial, the statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding." *Id.* ¶ 22 (quotation marks omitted).

[¶18] "A closing argument is improper if it conveys a shift in the burden of proof to the defendant or suggests that the defendant must present evidence in a criminal trial." *Id.* ¶ 24 (quotation marks omitted). A prosecutor must focus on what the evidence shows, rather than what the defendant has failed to show, and "[t]hus, . . . may say that *the record contains* no evidence to support a proposed finding but may not say that *the defendant failed to provide* evidence to support a proposed finding." *Id.* A prosecutor's "isolated misstep" does not require us to vacate a conviction if the comment was mild, the trial court properly instructed the jury on burdens of proof soon after the improper statement, and the record contains sufficient evidence to suggest that the comment "would not have tipped the balance." *See id.* ¶ 26.

[¶19] Thistle challenges three statements made by the State:

(1) That defense counsel made "evidence-free assertions";

(2) That "[Thistle] apparently thinks that Donna Friend is an accomplice to Dale Thistle's theft? That Donna Friend enabled that theft"; and

(3) That "there's no evidence that . . . [Donna] told Dale Thistle not to pay the heirs the money. There is no evidence of that. None. Seriously."

[¶20] None of these statements constitutes improper argument. Although the first statement was close to suggesting that Thistle did not present evidence in support of his defense, *see id.* ¶ 27 (holding that prosecutor's statement that defense counsel had attempted "to make an accusation and not . . . back it up with evidence" constituted improper closing argument), the statement is not an obvious error that requires vacatur of Thistle's conviction, for multiple reasons, *see id.* ¶ 29. First, the court properly instructed the jury on the State's burden of proof and Thistle's lack of burden shortly after the State made its statement in the rebuttal closing argument. Second, the State made its comment in response to Thistle's closing argument that Donna, not Thistle, had the obligation to pay the settlement funds to the heirs and the State had therefore failed to meet its burden of proving Thistle's legal obligation to make payment of the funds to Gilman's children. 17-A M.R.S. § 358(1)(A). Nothing disallows the State from observing that the record contains no evidence to

support a proposition asserted by the defense. *Penley*, 2023 ME 7, ¶ 24, 288 A.3d 1183. Finally, as discussed *infra*, there is sufficient evidence supporting the conviction to suggest that this isolated comment did not tip the balance against Thistle. *See id.* ¶ 26.

[¶21] Regarding the second statement, Thistle argues only that the statement mischaracterized Thistle's closing argument. Indeed, the State did not accurately characterize Thistle's closing argument. But even if this mischaracterization was improper, any error was cured by the trial court's jury instructions that closing arguments are not evidence and that the jury must determine what the evidence was and what it demonstrated.

[¶22] Finally, the third statement was not error. It did not improperly shift the evidentiary burden to Thistle; it focused on the evidence in the record, not Thistle's failure to present evidence of his innocence. *See State v. Wai Chan*, 2020 ME 91, ¶¶ 26-27, 236 A.3d 471 (holding that statement identifying the absence of evidence was not error because it focused on the evidence in the record). We therefore hold that the three statements do not rise to the level of prosecutorial error.

## C.      Sufficiency of the Evidence

[¶23]  Thistle lastly argues that the evidence was insufficient to support the jury's verdict because the record does not support the finding that Thistle owed a legal obligation to make any payment to Gilman's children.

[¶24]  When a defendant challenges the sufficiency of the evidence to support his criminal conviction, "we view the evidence in the light most favorable to the State to determine whether the factfinder could rationally find every element of the offense beyond a reasonable doubt."  *State v. Lowe*, 2015 ME 124, ¶ 27, 124 A.3d 156.  To convict Thistle of theft by misapplication of property, the jury had to find that the State proved beyond a reasonable doubt that Thistle (1) obtained property from someone, (2) had to make a specified payment or other disposition to a third person upon agreement or subject to a known legal obligation, (3) intentionally or recklessly failed to make that payment or disposition, and (4) dealt with the property as his own.  17-A M.R.S. § 358(1).

[¶25]  The record contains sufficient evidence for the jury to rationally find each element of theft by misapplication of property beyond a reasonable doubt.  With respect to Thistle's legal obligation,[7] the State presented evidence

---

[7] Thistle contends that the obligation created by the Maine Rules of Professional Conduct is not a sufficient basis for conviction because the rules do not create *legal* obligations.  The rules indicate

14

that Thistle knew that the money belonged to Gilman's children, regardless of whether it was to be paid to Donna or the children directly, as evidenced by his communications with another attorney regarding who was entitled to the settlement funds. Additionally, Thistle deposited the settlement funds into his IOLTA account and knew that he could not take money from the IOLTA account to pay his personal expenses. An attorney that Thistle called stated that, where an attorney had funds that the attorney knew were payable to a third person, the attorney should consult with the Board of Overseers of the Bar and follow Maine Rule of Professional Conduct 1.15(d).

[¶26] Contrary to Thistle's position, Donna's obligation as personal representative of the estate to distribute Gilman's assets to his children does not alter Thistle's legal obligations under the Maine Rules of Professional Conduct as the estate's attorney. *See* M.R. Prof. Conduct 1.15. The evidence establishes that Thistle owed a fiduciary obligation to safeguard and distribute the settlement funds, obtained on behalf of the estate, whether to Donna as

that Thistle had a fiduciary duty to safeguard the settlement funds, M.R. Prof. Conduct 1.15 cmt. 1, and the language of all three subsections demonstrates that they prescribe the proper conduct of an attorney for the purposes of professional discipline, *see* M.R. Prof. Conduct Preamble, ¶ 14B ("Some of the Rules are imperatives, cast in the terms of 'shall' or 'shall not.' These define proper conduct for purposes of professional discipline."). The rules describe Thistle's fiduciary duty to his client and any interested third parties, and it is axiomatic that a lawyer who misappropriates client funds in violation of these rules exposes himself to legal as well as professional consequences.

personal representative or to Gilman's children directly. *See In re Ingeneri*, 321 B.R. 601, 604-05 (Bankr. D. Me. 2005); *cf. State v. Schmidt*, 2008 ME 151, ¶ 27, 957 A.2d 80 (holding that a "reasonable view of the evidence" supported finding that defendant who had "sole . . . control over" funds obtained as an agent of another owed a fiduciary obligation under section 358(1)(A) to make the payments for which the funds were intended). Under no view of his obligations could he distribute the funds to himself or his family.

[¶27] Regarding the other elements, the State offered proof that Thistle owed Gilman's estate a specified payment of approximately $290,000. Thistle intentionally or recklessly failed to make payment because, despite knowing that the settlement funds belonged to Gilman's children and knowing of his obligation as an attorney to safeguard and distribute the property, Thistle never notified Gilman's children or transferred the funds to them. Lastly, Thistle dealt with Gilman's children's settlement funds as his own, drawing down the IOLTA funds by making payments to his son, his ex-wife, himself, and "cash." Viewing the evidence in the light most favorable to the State, we therefore conclude that the jury rationally could have found by proof beyond a reasonable doubt each element of theft by misapplication of property. *See* 17-A M.R.S. § 358(1).

The entry is:

Judgment affirmed.

———————————

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Dale F. Thistle

Aaron M. Frey, Attorney General, and Charles M. Boyle, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot Unified Criminal Docket docket number CR-2019-3451
FOR CLERK REFERENCE ONLY